J. W. HILL, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 7, 1896.

1. **Railroads**: NEGLIGENCE IN MAINTENANCE OF INSUFFICIENT GATE. The evidence is considered and held sufficient to establish a cause of action against a railway company for negligence in maintaining in an improper condition a gate which formed a part of the railroad fence.

2. ———: KILLING OF STOCK: OBLIGATION OF RAILWAY COMPANY'S SERVANTS TO MAINTAIN WATCH FOR STOCK. If stock is killed by collision with a railway train after entering upon the right of way at a place where a sufficient fence is maintained, the fact that the servants of the railway company in charge of the train could by the exercise of ordinary care have observed the stock in time to avoid the collision will not render that company responsible for the injury.

3. ———: SPECIAL STATUTE OF LIMITATIONS. The special statute of limitations in respect to action for damages, namely, Revised Statutes, section 4429, does not apply to an action against a railway company for the killing of stock, which is predicated upon negligence at common law warranting a recovery independent of Revised Statutes, section 4428.

*Appeal from the Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*M. L. Clardy* and *Wm. S. Shirk* for appellant.

*John W. Booth* for respondent.

ROMBAUER, P. J.—This cause was heretofore before this court and its opinion is reported in 49 Mo. App. 520. The appeal then was taken by the plaintiff from a judgment rendered against him upon demurrer to his petition. We reversed the judgment, holding that the plaintiff's petition stated a good cause of action, but, as our opinion on certain points was in conflict with prior opinions of the Kansas City court of appeals, we certified the case to the supreme court. The supreme court adopted our views by stating that they were supported by reason and authority (*Hill v. Railroad*, 121 Mo. 477), hence our former opinion must be considered to be, not only the law of this particular case, but the law of the state on the points involved.

The case was retried in the circuit court, the trial resulting in a verdict and judgment for plaintiff. The defendant assigns for error the action of the court in refusing to take the case from the jury at the close of plaintiff's evidence, and the action of the court in giving and refusing instructions.

The cause was tried on the same petition which we formerly upheld on demurrer, and which is set out in full in our former opinion. As the petition is very lengthy, we deem it unnecessary to set it out in full again, but will briefly state its general tenor. It seeks to recover damages for the killing of plaintiff's horses as the result of defendant's negligence. The negli-

gence charged is twofold: *First*, that the defendant kept a gate, forming part of the fence of its right of way, insecurely fastened, whereby the horses in question were permitted to enter such right of way between a cattle guard and bridge, and were killed in the dangerous pocket formed by the two fences, cattle guard and bridge; *next*, that the agents of defendant running its engine could have seen the horses by the exercise of reasonable care and stopped the engine and train before overtaking or striking any of said horses, but did then and there negligently run said engine and train upon said horses and kill the same.

Touching the first act of negligence the plaintiff gave substantial evidence tending to show the following facts: The defendant maintained a gate as part of its railroad fence at a point where by law it was not required to fence, but where it might have fenced without inconvenience to itself or the public. The gate was one of two gates at the end of a blind lane terminating at the railroad right of way, and was wholly useless for any desirable purpose. It was old and shackley (shaky). It was only fastened by hook and staple to a post, and, as it had no bearing upon it, it was apt to swing loose if struck by a gust of wind. The gate was seen open repeatedly on former occasions with no one near by, and was open on the morning of the day of the accident when stock strayed through it on the right of way. There was also substantial evidence tending to show that the plaintiff's horses entered the right of way through this gate on the day they were killed, that they climbed the railroad bank at a little distance from it, and then ran westwardly toward the bridge. They were struck by the engine in the immediate vicinity of the bridge, where the railroad bank had a considerable elevation. This evidence, if believed by the jury, was sufficient, under the rule

stated in our former opinion to make a *prima facie* case for the plaintiff. It was negligence to leave an unnecessary gate in such a condition that it would easily swing open by the action of the elements, and serve as an invitation to passers-by to enter. It is not pretended that the gate was at a farm crossing; in fact, the evidence shows that, shortly after the accident, it was permanently closed by putting a solid wire fence in its place. The gate was at most part of a railroad fence, and as such it should have had all the stability of a fence if the defendant seeks to avail itself of it as a fence. That the leaving of the gate in the condition mentioned was a concurring cause of the accident complained of admits but of little doubt under the evidence. The defendant's first assignment of error is, therefore, untenable.

For the same reason we must conclude that the court did not err in giving plaintiff's first instruction, which predicates a right of recovery on the facts hereinabove stated. In fact, the second instruction given on behalf of defendant concedes that the plaintiff's first instruction was warranted in law.

The court upon plaintiff's request gave the following instruction, of which the defendant next complains:

"Even though you believe from the evidence that the plaintiff's horses got upon the railroad track in the city of Pacific without any negligence or want of care on the part of defendant, yet if you believe and find from the evidence that the said horses, while being on the track, were seen, or by the exercise of reasonable care could be seen, by the persons in charge of the engine and train, and that such persons could have stopped said engine and train before overtaking and striking said horses, but carelessly and negligently failed to do so, and ran said engine and cars in and upon said horses, then your verdict should be for the plaintiff."

This instruction is challenged on the ground that there is no evidence to support it. When the case was last here, we decided that the defendant's trainmen at the place in question were bound to exercise the same reasonable lookout for animals, as they would be if the road was unfenced, assuming that the gate was insufficient as part of a permanent fence. We refer in this connection to the discussion of the subject found in 49 Mo. App., at pages 532 and following.

The accident in this case was seen by no one. The plaintiff offered no evidence having the least tendency to show that the horses entered upon the right of way in the daytime, although several of its witnesses passed over the road on the day of the accident. The testimony adduced by the defendant was to the effect, that the accident happened about 10 o'clock P. M. on a dark night while a heavy rain was falling. The engineer of the train which struck the horses testified that the train was a heavy train, running at the rate of fifteen miles an hour; that he was at his post keeping a close lookout, but that he could not see further ahead of the train than thirty or forty feet, as the glass of the headlight, as well as the glass of the cab, were misty and obscured from the moisture. The same witness testified that the shortest distance in which the train could have been stopped, running at the rate of speed it did, was one hundred and fifty feet, and probably it could not have been stopped inside of two hundred; that he did not see the horses; that they might have run in front of the engine on the left side of the track without his ability to discover them, even if they were close to the train; that he felt a jerk of the engine as if it had collided with something, and at the next station discovered the entrails of an animal on the engine. There was some evidence

from which it was reasonably inferable that, if the accident had occurred in daytime, the horses on that point of the road could have been seen far enough ahead to stop the train, but there was no evidence, either direct or inferential, that the accident did occur in the daytime, or that any other engine than the one testified to struck the horses. The instruction, therefore, as far as it submitted to the jury the question that the animals were seen, or could by reasonable care have been seen, in time to avoid a collision, not only rested on the barest conjecture but was opposed to all the positive evidence in the case, and should not have been given.

The instruction, however, is fatally defective in another respect. There was substantial evidence offered by the defendant to the effect, that this gate had been securely fastened on the morning of the day of the accident, and that from that time on it was a substantial fence. If it was a substantial fence when the horses entered upon the right of way, the defendant was not liable unless its servants saw the horses in time to avoid the collision. There is nothing in our former opinion which states a different rule. This instruction, as will be seen, entirely ignores the sufficiency of the fence, and in effect holds the defendant responsible if its servants in charge of the train might have seen the horses by the exercise of care in time to avoid a collision. Such is not the rule in a case where the right of way is sufficiently fenced. That the instruction under the evidence was prejudicial to the defendant admits of no doubt.

The defendant's answer interposed the special statute of limitations of one year, found in section 4429 of the Revised Statutes of 1889, which provides: "Every action instituted by virtue of the preceding sections of this chapter shall be commenced within

one year after the cause of such action shall accrue.'' Among the preceding sections is the one which holds a company responsible, without proof of negligence on part of its servants, for animals killed on a railroad. This section was held to apply to cases where stock is killed on part of a railroad which the company might have fenced, although it was not required by law to fence it. The defendant asked the following instruction, which the court refused:

"The jury are instructed that, if they believe and find from the evidence that the killing of plaintiff's horses was solely due to the negligence of defendant in permitting its fence or the gate in said fence to become and remain out of repair within the corporate limits of the city of Pacific, then this action is barred because not begun within one year from the date of the said killing of said horses, and the jury must find in favor of defendant."

There was no error in refusing this instruction. The plaintiff's cause of action is not based on section 4428. The petition does not maintain that the horses were killed where the defendant was not bound to fence but might have fenced, but that the defendant erected only a partial fence, that is, a fence with a gap in it turning its right of way into a pocket dangerous to animals entering through the gap. The petition, therefore, counts on acts tending to show negligence at common law, which, if found by the jury, warranted a recovery independent of the statute. Such we take to be the effect of the decisions in this state. *Boggs v. Railroad*, 18 Mo. App. 274; *Iba v. Railroad*, 45 Mo. 469; *Minter v. Railroad*, 82 Mo. 128; *Boone v. Railroad*, 20 Mo. App. 232.

For error in giving the plaintiff's second instruction, however, the judgment must be reversed and the cause remanded. So ordered. All the judges concur.