JAMES ALEXANDER, Respondent, v. THE MIS-
SOURI PACIFIC RAILWAY COMPANY, Ap-
pellant.

Kansas City Court of Appeals, March 2, 1914.

1. NEGLIGENCE: Railroads: Live Stock: Actual Knowledge. A
railway track was fenced through a farm and there was a farm
crossing, with gates, for the use of the owner of the farm.
The owner attempted to drive four loose mules through the
gates. When turned in on the right of way they ran off down
the track a considerable distance. The owner finally got them
turned back to the crossing but two of them still would not go
out the opposite gate and were killed by a passing train. It
was *held* that it was found that as the mules were thus placed
in a dangerous position by the negligence of the owner, he
could not recover. *Further held*, that if such servants actually
saw the mules in peril in time to have avoided striking them,
it was their duty to have done so.

2. ———: ———: ———: ———: Inference: Plain View. Evi-
dence that mules could have been plainly seen on the track
by the engineer or fireman of a locomotive engine, is sufficient
upon which to base an inference that they did see them.

3. ———: Duty: Lookout: Stock. It is the duty of railway serv-
ants in charge of an engine to be on the lookout for stock at
farm crossings.

4. ———: Negligence of Owner: Duty: Lookout. If the farm
owner in attempting to drive his stock over a farm crossing
negligently allows it to run off down the right of way, the
railway servants in charge of the engine are not required to
be on the lookout for such stock.

5. ———: Negligence: Duty. There is no actionable negligence
unless there is a duty owing to the complaining party.

6. ———: Negligence: Duty: Question for the Jury. Whether
the owner was guilty of negligence in permitting his stock to
run away from a farm crossing and then back to it where they
were struck by a railway engine is a question for the jury.

7. ———: Negligence: Evidence. There is no duty to sound the
whistle of an engine for the approach to a farm crossing, and
it is error to admit evidence of the railway company's servants
failing to sound such whistle.

Appeal from Jackson Circuit Court.—*Hon. James H. Harkless,* Special Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *Edward J. White* for appellant.

*W. H. Carr, W. B. Bostian* and *Paxton & Rose* for respondent.

ELLISON, P. J.—Plaintiff owned a farm through which defendant's railway ran. The track was fenced, but a farm crossing, with gates on either side, had been established. Plaintiff was attempting to drive four mules over this crossing when two of them were killed by one of defendant's trains. He charged the killing as being the result of defendant's negligence and recovered judgment in the circuit court.

It appears that plaintiff desiring to take his mules from one part of his farm to pasture at another part, opened the two gates at the crossing and drove his mules in, when they ran down the right of way between the fences 150 yards or more. He succeeded in turning them back to the crossing when two went out the gate and two stopped within the gates, so close to the track as to be struck by a passing train.

The trial was directed, over defendant's protest, to proceed upon the theory that it is the duty of railway servants in charge of the engine to be on the lookout for animals at farm crossings, and an instruction (Number 2) was given for plaintiff authorizing a verdict for him even if such servants did not see the animals, if they might have seen them, in the exercise of ordinary care, had they been on the lookout.

It is the law in this state that it is the duty of a railway company's servants to be on the lookout for animals at .both public and private road crossings.

But a private *road* in this State is a statutory road well understood. It is not the farm crossing in fields where the railway track is fenced. It has ever been the rule that railway servants are not required to be on the lookout for stock on the track when passing through enclosed fields where the track is fenced on both sides. [Buckman v. Railway Co., 83 Mo. App. 129; Jewett v. Ry. Co., 38 Mo. App. 48; Hill v. Ry. Co., 66 Mo. App. 184, 189.] If any exception existed as to the crossings in such enclosures it would seem it should have been mentioned. The case of Hill v. Railway Co., 49 Mo. App. 520 (S. C. 121 Mo. 477) did not involve enclosed fields or farm crossings, as will be seen by reading the petition set out by Judge Thompson and the statement of Judge Rombauer in same case 66 Mo. App. l. c. 186, 187, and we have not been able to understand why it should have been considered by the former judge to be in conflict with Hoffman v. Ry. Co., 24 Mo. App. 546; or how he could have considered that the latter case was in conflict with Kendig v. Ry. Co., 79 Mo. 208, a case not involving the same question.

But we need not decide this case on the foregoing suggestions, for let them be as they may, and even though it may not be the duty of a railway company to give warning of the approach of its train at a farm crossing (Maxey v. Ry. Co., 113 Mo. 1) still we may assume that as the adjacent owner has a right to use, and must be expected to use and is not a trespasser in using, the farm crossing which has been put in for his convenience, the railway servants in charge of its engine ought to be required to be on the lookout for him. [Bishop v. Ry. Co., 4 N. Dak. 536; Railway v. Conlon, 9 Kas. App. 116.] But with this assumption it does not follow that the owner should recover in all cases.

The railway servants though required to be on the lookout when approaching farm crossings, should not be required to look out for stock at any other place on the right of way between its fences than at the cross-

ing. Nor should the company be held for the consequences of the owner's negligence (if found to be negligence) in turning his stock, uncontrolled, into the right of way and permitting it to run off down the track. They were not under any duty to anticipate such condition and to be on the lookout for it.

But in this case the mules had returned to the crossing when killed were at a place where defendant's servants should have been on the lookout. Undoubtedly, if the animals had not run down the track, and had been killed as they were being driven from gate to gate, defendant would have been liable. But in view of the manner in which plaintiff attempted to cross, including the escape of his mules, was defendant negligent in failing to be on the lookout? In other words, did defendant owe to *him* a duty to be on the lookout, even if they did get back to the crossing before being struck? Though it may be correctly stated that certain acts or omissions are, in general, negligence, yet these acts are not actionable negligence in favor of anyone to whom no duty is owing. "Where there is no duty, there can be no actionable negligence." [Coin v. Lounge Co., 222 Mo. l. c. 507.] "Actionable negligence consists of the neglect of the use of ordinary care or skill toward a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect the plaintiff, without contributory negligence on his part, has suffered injury to his person or property." [Wenker v. M., K. & T. Ry. Co., 169 Mo. l. c. 599; Troth v. Norcross, 111 Mo. l. c. 636; Huft v. Railroad, 222 Mo. 286, 299.] "Negligence has been defined to be a failure of duty." [Booker v. Railroad, 144 Mo. App. l. c. 285.] "Negligence is a relative term, and in order to show one guilty of actionable negligence it must first be shown that he owed some duty to another which he has failed to perform and that his failure resulted in injury to the other." [Creason v. Railroad, 149 Mo. App. l. c. 228.]

It is our opinion that if plaintiff was guilty of negligence in the manner of his effort to take his mules through, or over, the crossing and that negligence was the direct cause of their being in this dangerous position, there was no duty owing to him unless defendant's servants in charge of the engine saw them or might have seen them if they had been on the lookout in time to have avoided the collision; and these are questions of fact for the jury. In this connection, if plaintiff knew of the time this train was due to pass and that it had not passed, it is a circumstance to weigh with the others concerning the manner in which he attempted to get the mules over.

What we have written will dispense with notice of much that is said for and against the court's action on the instructions for either party. Plaintiff's second instruction contains error in submitting as a part of his case whether defendant's servants "could have seen the mules running in front of its train, or standing at said private crossing so near the track as to be in the way of the train," etc. The first clause of this quotation was not alleged in the petition, and therefore is not a ground of negligence charged, and should be omitted at another trial.

There was error in the admission of evidence over defendant's protest that no whistle was sounded for this crossing. Under the circumstances of this case that was a serious and substantial error, the jury in all probability, giving it much weight in arriving at the verdict. They mut have considered that defendant violated its duty in not whistling, whereas the statute does not require it. [Maxey v. Railroad, 113 Mo. 1.] Besides the prejudice to defendant's case naturally excited by such supposed dereliction, the jury in the special circumstances developed in evidence, could well have said that if the whistle had been sounded plaintiff's hired man would have become aware of the train's approach and would have driven the mules away

before they were struck; or that the sound of the whistle itself might have caused them to move away.

The judgment is reversed and the cause remanded. All concur.