CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY
V.
ALICE TILTON.

*Railroads—Personal Injury—Highway Crossing—Obstructions—Rate of Speed—Ordinance—Instructions—Contributory Negligence.*

1. In an action against a railroad company to recover damages for an injury received at a highway crossing, it is *held:* That the verdict for the plaintiff is sustained by the evidence; that instructions touching the growth

C. & E. I. R. R. Co. v. Tilton.

of trees and a hedge on the defendant's right of way, so as to obstruct the view of the crossing in question, and with reference to compliance with an ordinance as to the rate of speed, were properly given, and that an instruction to the effect that certain facts made out a case of negligence, was properly refused.

2. It would be improper for the court to instruct the jury as an absolute proposition of law, equally applicable in all cases and under all circumstances, that one attempting to cross a railroad track must first stop and listen to see if there be an approaching train. It is for the jury to determine from the facts of the particular case whether the plaintiff was guilty of negligence.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Vermillion County; the Hon. J. W. WILKIN, Judge, presiding.

Messrs. WM. ARMSTRONG and J. B. MANN, for appellant.

Messrs. H. M. STEELY and F. BOOKWALTER, for appellee.

It is gross negligence on the part of a railroad company to run its trains through a town at a rate of speed prohibited by law. C. & A. R. R. Co. v. Becker, 84 Ill. 483; C. & A. R. R. Co. v. Engle, 84 Ill. 397; C., B. & Q. R. R. Co. v. Stumps, 69 Ill. 409; C., B. & Q. R. R. Co. v. Lee, 87 Ill. 454; Wabash R. R. Co. v. Henks, 91 Ill. 406; L. E. & W. Ry. Co. v. Zoffinger, 107 Ill. 199; I. & St. L. R. R. Co. v. Peyton, 76 Ill. 340; T. P. & W. R. R. Co. v. Deacon, 63 Ill. 91.

It was the duty of appellant to cause a bell to be rung or a whistle sounded continuously as they approached the crossing. If this contributed to injury of appellee, or by its use might have prevented it, the company is liable. T., W. & W. Ry. Co. v. Jones, 76 Ill. 311; I. C. R. R. Co. v. Benton, 69 Ill. 174; P. P. & J. R. R. Co. v. Siltman, 88 Ill. 529; I. C. R. R. Co. v. Modglin, 85 Ill. 481.

It was negligence in appellant to suffer the hedge to grow upon its right of way, obstructing the view of approaching trains. R. R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235; I. & St. L. R. R. Co. v. Smith, 78 Ill. 112; Dimick v. C. & N. W. Ry. Co., 80 Ill. 338; P. P. & J. R. R. Co. v. Siltman, 88 Ill. 529; C., B. & Q. R. R. Co. v. Payne, 59 Ill. 541.

The whole question of negligence is one of fact, for the jury to determine under all the evidence, and not for the court. I. C. R. R. Co. v. Haskins, 115 Ill. 300; C. & A. R. R. Co. v. Bonifield, 104 Ill. 224; C. & A. R. R. Co. v. Robinson, 8 Ill. App. 140.

CONGER, P. J.   The declaration in this case alleges " that on the 25th day of August, 1886, at the City of Hoopeston, Vermillion County, the plaintiff was traveling in a buggy drawn by two horses, on Penn Street, which is a public street and highway within the corporate limits of the said Hoopeston, which highway crossed the defendant's road; that plaintiff was traveling in said buggy westward on said highway, across the right of way of the defendant, using due care and caution, and just as said horses, drawing said buggy, approached defendant's track, and just as their heads were about on a line with the east side of the main track of defendant's road, a train of cars of defendant, drawn by a locomotive, approached said highway crossing from the south, which said locomotive and train were negligently run and operated by defendant, that is to say, to wit: said train was running at a great speed, to wit, twenty miles per hour, contrary to the provisions of Sec. 1, Chap. 8, of the Revised Ordinances of the City of Hoopeston. Said ordinance declares that it shall be unlawful for any railroad corporation to run a train along its tracks within the c r-porate limits of Hoopeston, at a speed exceeding the rate of six miles per hour; *provided*, that passenger trains may be run at the rate of ten miles per hour.   Plaintiff further avers that no whistle was sounded by the engineer or fireman continuously before the train reached said crossing, as required by law, and that along the east line of defendant's right of way, leading south from said crossing, there was growing a very high, wide-spread hedge, and a large number of tall trees; that by reason of defendant's not sounding the whistle or ringing said bell, as required by law, and by reason of said train moving at such rate of speed, and by reason of the obstruction caused by said hedge and trees, plaintiff did not know of the approach of said train, and by reason of the premises said horses

became frightened and turned short around, upsetting the buggy and running away, throwing plaintiff out upon the ground, breaking her left arm and dislocating her left wrist, and otherwise injuring her person; which injuries caused her great pain and deprived her for five months from following the business in which she was engaged, to-wit, that of school teacher. That at said business she was able to earn $50 per month before she received said injury, and by reason of said injuries she was compelled to pay out and obligate herself to pay out large sums of money, to-wit, $200, in obtaining surgical and medical attendance, board, care and nursing; that the said plaintiff was greatly damaged by reason of said injuries being permanent, to her damage in the sum of $1,000."

The second count of the declaration was the same as the first, except the additional allegation "that the train in question was a special train and not running upon the time of any regular train, and that the train was carelessly and wilfully and negligently run, and that no bell was rung; that the said hedge extended for a distance of half a mile south from said crossing, thereby obstructing plaintiff's view of defendant's track in the direction from which said train was approaching, and that by reason of defendant's negligently suffering said obstruction to grow along said right of way and obstructing plaintiff's view, and also by reason of its failure to ring the bell or sound the whistle, plaintiff could not know and was wholly unaware of the approach of said train until nearly upon defendant's track, and that by reason of the great speed of the train the plaintiff was unable to get away from defendant's track until said train shot past."

The plea of general issue was filed, and the trial resulted in a judgment in favor of appellee for $800.

The evidence is quite voluminous upon the speed of appellant's train, whether the bell was rung or the whistle sounded, and as to the character of the obstruction to the view of appellee from the street upon which she was attempting to cross appellant's road, caused by the hedge and trees standing upon appellant's right of way, and, as usual in such cases, is contradictory; but we think, after a careful examination, there is no

good reason to interfere with the conclusions reached by the jury upon the questions of fact.

Objection is made to instruction No. 1, given for appellee, which is as follows:

" 1. The court instructs the jury that a railroad company has no right to permit or suffer a hedge row, trees or anything else to grow upon or overhanging its right of way to such a height as to materially obstruct the view of a highway or a street crossing, and in this case if you believe from the evidence that the defendant permitted or suffered the hedge row and tall trees in question to grow upon or along and overhang_ing their right of way to such a height and breadth as to materially obstruct plaintiff's and her father's view of the approaching train, and that by reason thereof plaintiff was injured, and that she and her father used due care and caution in approaching said crossing, then your verdict should be for the plaintiff."

It is insisted that this instruction would prohibit a railroad company from placing obstructions along its right of way, such as stations, warehouses and other structures necessary for the transaction of its business. We do not think a fair construction of this instruction will make it subject to such an objection. It is speaking of things growing and would be understood by the jury as applying to the obstructions to which the testimony related, that is, the trees and hedge at and near the street crossing where the accident happened.

The second of appellee's instructions is objected to because it states "that it is the duty of a railroad company whose road runs through a city, to run their trains while in the city at such a rate of speed as to have them under control, and be able to avoid injury to persons and property; and it is negligence on the part of a railroad company to run its trains through a city at a rate of speed prohibited by law."

If the meaning of this instruction is, as contended by appellant, that the company must so run its trains as to avoid, under all circumstances and absolutely, injuring persons and property, then it can not be sustained. But we do not think this a reasonable construction.

The rate of speed allowed by the ordinances of the City of Hoopeston had been shown to the jury by the evidence, and one of the controverted questions was, whether appellant's train, at the time of the accident, was running faster than the prescribed rule, and we think a jury would understand the language of the instruction as applying to injuries caused by a failure to comply with the ordinance.

Appellant complains of the refusal of the court to give the following instruction:

"8. It is not the exercise of ordinary care and prudence for a person to trot a team of horses directly onto a railroad crossing, where he knows the view of the track to be obscured, without making an effort by stopping, or listening, or otherwise, to ascertain whether a train is approaching, or whether it is safe to drive upon the track."

While it is true this instruction was held to be a proper one in C. & N. W. Ry. Co. v. Hatch, 79 Ill. 137, still we think such holding has been very much modified if not expressly overruled in C., St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587, in which case the court say: "We are aware of expressions by this court, when passing upon the law and facts, and of like expressions by other courts of the highest respectability, that the failure of one approaching a railroad crossing to pause and look for the approach of trains, was such negligence as would, in the case then under consideration, preclude a recovery. But we are not prepared to say, as a matter of law, that a person approaching a railroad crossing, when there is nothing apparent to warn him of danger, and at which he knows a flagman is stationed whose duty it is to warn all persons of danger from running trains, is required to look elsewhere than to the flagman. * * * It may be, that in the particular case, a reasonably prudent and careful man would do more than observe the absence of the ordinary signal of the flagman; but if so, the facts and circumstances should be submitted to the jury to be considered by them in determining whether the party had, under all the circumstances, exercised ordinary care and caution to prevent injury."

In L. S. & M. S. Ry. Co. v. O'Conner, 115 Ill. 262, the

court uses the following language: "The court refused defendant's sixteenth instruction which, in substance, declares that it was the duty of deceased to keep a constant lookout for his safety, and if they find, from the evidence, that at the time of the accident he was not keeping a lookout, and that the injury occurred, wholly, or in part, from such omission, plaintiff can not recover. It is no doubt true that common prudence required the deceased to keep a constant lookout for his safety, but whether he did so or not was a question of fact for the jury, and not one of law to be determined by the court. The instruction, in effect, directed the jury that certain facts made out a case of negligence against the deceased which precluded a recovery, when it was the province of the jury to determine that fact for themselves from the evidence.

From these and other cases, in which the Supreme Court has said that it is improper for the court to tell the jury that any particular state of facts would or would not be negligence, we are at a loss to perceive how the court can declare to the jury as an absolute proposition of law equally applicable in all cases and under all circumstances, that one attempting to cross a railroad track must first stop and listen to see if there be an approaching train. The circumstances that would relieve one from such a prudential and reasonable act may rarely occur, but if it is not always and under all circumstances a duty, then the particular circumstances of each case must determine whether the omission so to do would be negligence or not. We think the instruction was properly refused.

Finding no substantial error in the record, the judgment of the court below will be affirmed.

*Judgment affirmed.*