## Terre Haute & Peoria Railroad Company

### v.

## Francis M. Barr.

*Railroads—Injury at Highway Crossing—Negligence—Failure to Give Statutory Signal—Obstruction to View—Contributory Negligence—Special Interrogatories—Answers to—Evidence—Instructions.*

1. It is negligence in a railroad company to allow its right of way to become so grown with vegetation at a crossing as to obstruct the view of its servants approaching the same by train, or of persons upon the highway.

2. It is *prima facie* negligence to omit the statutory signal upon approaching a crossing.

3. It is not necessarily negligent in a person to fail to stop and listen upon approaching a crossing.

4. In an action brought to recover damages from a railroad company for injuries received at a highway crossing, this court declines 'to interfere with a verdict for the plaintiff.

5. The jury may answer that they do not know, in reply to special interrogatories touching matters to which the evidence does not warrant any other.

[Opinion filed February 21, 1889.]

Appeal from the Circuit Court of Logan County; the Hon. Cyrus Epler, Judge, presiding.

Messrs. W. E. LODGE and BLINN & HOBLIT, for appellant.

Apply the principle of law laid down by our Supreme Court in L. S. & M. S. R. R. Co. v. Hart, 87 Ills. 529, to this case, and the plaintiff must fail. The court there say on page 534, that it is the duty of every person about to cross a railroad track to approach cautiously, and endeavor to ascertain if there is present danger in crossing, otherwise they can not recover for injury thereby received.

Messrs. A. J. BARR and BEACH & HODNETT, for appellee.

Whether the son of appellee exercised due care and prudence was a question of fact and not of law. C., St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 587; C. & A. R. R. Co. v. Carey, 115 Ill. 115.

Under the facts of this case the plaintiff was entitled to recover. C., B. & Q. Ry. v. Payne, adm'r, 59 Ill. 534; St. L. & T. H. Ry. Co. v. Faitz, 23 Ill. App. 498.

If there is evidence in the record when considered alone that is sufficient to sustain the verdict, that will be sufficient. Ill. & St. L. Ry. & C. Co. v. Ogle, 92 Ill. 353; Calvert v. Carpenter, 96 Ill. 63; Chapman v. Burt, 77 Ill. 337.

Where the evidence is conflicting the verdict must be held to settle the questions of fact. Conrad Seipp Brewing Co. v. Doody, 25 Ill. App. 305; Winslow v. City of Bloomington, 24 Ill. App. 647.

A charge of negligence presents a question of fact, and unless the verdict is clearly against the weight of the evidence it will be final. C., M. & St. P. R. R. Co. v. Krueger, 23 Ill. App. 639.

Failure to ring bell or sound whistle makes *prima facie* case of negligence. G. & C. U. R. R. Co. v. Loomis, 13 Ill. 548; C. & A. R. R. Co. v. Elmore, 67 Ill. 176.

The jury are the judges of the credibility of the witnesses, and are not governed by the number of witnesses. K. N. L. P. Co. v. True, 88 Ill. 608.

The general verdict was not in conflict with the special findings. C. & A. R. R. Co. v. Murray, 71 Ill. 601.

It is negligence in a railway company to suffer weeds to grow on its right of way, to such a height as to materially

obstruct the view of a highway crossing.    I. & St. L. R. R.
Co. v. Smith, 78 Ill. 112; O. & M. R. R. Co. v. Clutter, 82
Ill. 123.

CONGER, J.    This was an action brought by appellee against
appellant to recover the value of a team of horses killed,
and harness destroyed, at a highway crossing known as Doni-
gan's crossing, by the engine of appellant, on the 30th day
of July, 1888.    On that day the son of appellee, aged about
fourteen, with his mother, the wife of appellee, was driving
appellee's team and wagon toward the town of Atlanta.    The
wagon road upon which they were traveling ran north and
south, and about one mile east of Atlanta crossed the appellant's
railroad track, which runs nearly east from Waynesville to
Atlanta.

At the crossing, the railway track and highway are about
the same level; along the highway, on the east side, is a high
hedge, from twelve to eighteen feet high, and extending up
to within about ten feet of the railroad track, where it joins a
single panel of fence which connects with the cattle guard.
From this hedge eastward upon the south side of the right of
way, and about twenty-three feet from the center of the rail-
road track is another hedge, from eighteen to twenty feet
high, the branches of which hung over to within five or six
feet of the track.

These hedges obstruct the view of the track as one is
approaching it from the south.

One witness, who made observations and measurements
after the accident, testified that he had to get within two feet
of the railroad track before he could see the track past the
cattle guard.    To further obstruct the view, tall weeds, ten or
twelve feet high, were allowed to grow on the south side of
the track, and on the right of way, at the east side of the road-
crossing.

The train which caused the accident was some two hours
late.    It was a freight train, composed of engine, three
freight cars and a caboose, and steam had been shut off before
reaching this crossing, the grade slightly descending from the
east to the west at that point.

The team of appellee was in the act of crossing, whether in a walk, or a slow trot, is not certain, when appellant's train appeared from behind the hedge, striking the horses behind the shoulders, killing them, together with the wife and son of appellee.

The fireman who was upon the south side of the cab, and ringing the bell and looking ahead, as he says, did not see the horses until the engine was within twenty or thirty feet of the crossing. The engineer never saw them until their heads appeared upon his side (the north side) of the head-light an instant only before the collision occurred.

There are two charges in the declaration of negligence: a failure to give the statutory signals, and allowing the right of way to be obstructed by weeds and these hedges.

It was a very dangerous place, and it was the duty of appellant's servants to have complied strictly with the law in reference to the giving of signals. Upon this question there was a sharp conflict in the evidence; and even if, from a consideration of it all, we should have reached a different conclusion from that of the jury, (upon which we express no opinion) there was evidence to justify the verdict of the jury upon that point.

It seems to us that a bare statement of the condition of the right of way at this crossing sustains the charge of negligence against appellant.

In Ind. & St. L. R. R. Co. v. Smith, 78 Ill. 112, it is said : " It was negligence in the company to permit or suffer weeds or anything else to grow upon its right of way to such a height as would materially obstruct the view of the highway. The safety of persons and property alike make it necessary that the company should keep its right of way free from obstructions, so that persons approaching the crossing may readily ascertain whether there is danger, and the employes in charge may be enabled to discover whether there is anything on the track." It was not error for the court to give the fifth instruction, which was in substance that if the servants of appellant omitted to give the signals for the crossing required by law, such omission constitutes a *prima facie* case

T. H. & P. R. R. Co. v. Barr.

of negligence.    Galena & Chicago U. R. R. Co. v. Loomis, 13
Ill. 548 ; I. C. R. R. Co. v. Gillis, 68 Ill. 317.    An omission
to perform a statutory duty is *prima facie* negligence.    St.
L., J. & C. R. R. Co. v. Terhune, 50 Ill. 181.

Appellant complains because the jury, in answer to two of
the special interrogatories, said they did not know.    They
were as follows:

"No. 3.  Did the plaintiff's son drive the team in a trot
upon the railroad crossing when they were killed, without
stopping to listen for an approaching train?    Answer.    Do
not know."

"No. 5.    If the plaintiff's son, who was driving the team
of horses that was killed, had stopped and listened for an
approaching train a short distance before approaching the rail-
road track, would or could he have heard the approaching
train that killed the horses?    Answer.    Do not know."

The witness Shaw, who was driving behind appellee's team
as it went onto the crossing, says, in reference to the gait of
appellee's team at that time:    "They were going in a shack
of a little trot, I *suppose*;" while Shay, the fireman, says:
"Why, it seemed they were walking or coming upon the
crossing when I seen them come on; either walking or in a
jog when I first seen them."    This was the entire evidence
upon this point, and from it we are not prepared to hold that
the jury failed in their duty in answering number three as
they did.

The fifth interrogatory could not be satisfactorily answered.
Shaw, who was behind appellee's team, said he did not hear
the train, although it must have been very close, for an instant
afterward it rushed into sight from behind the hedge and
weeds at the cattle guard, not more than thirty feet from the
team.    The train was running down a slight grade without
steam, and we do not think the jury were required to say, by
their finding, as a matter of fact, whether the boy could or
not have heard the approaching train had he stopped and lis-
tened.

It is also insisted that the evidence shows negligence on the
part of appellee's son.    This was a question of fact for the

jury. This court has held that it can not be laid down as a principle of law that it is necessarily negligent for one about to cross a railroad track not to stop and look for trains. It may be so under some circumstances, and under others, not.

And when the jury have said, as they did by their verdict in this case, that under all the circumstances attending this unfortunate accident there was ordinary care upon the part of appellee's son, we see no good reason for interfering.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*