AYERS, Appellant, v. WABASH RAILROAD COMPANY.

Division One, July 1, 1905.

1. **PRACTICE: Cross-Examination of Witness: Affirmative Matters.** When a witness has been sworn in chief by plaintiff to prove certain material facts, the defendant may not only cross-examine him in relation to the matters he was called to prove, but may examine him as to any matter embraced within the issues. Defendant may establish his defense by him without calling any other witness, yet as to those matters he is the defendant's witness; his testimony is defendant's, not plaintiff's; and if plaintiff has, by other evidence than the affirmative matters brought out by defendant, made out a prima facie case, the court can not take the case from the jury.

2. **NEGLIGENCE: Private Crossing: Whistle.** It is not negligence *per se* to fail to sound the whistle or ring the bell of a railroad engine on approaching a private crossing. The statute does not so require. Whether or not failure to do either is negligence depends on the circumstances of the case; and where plaintiff's evidence shows that his condition was such that neither the sounding of the whistle nor the ringing of the bell would have had any effect upon his actions, the company's failure to do either is not negligence.

3. ———: **Footpath: Lying on Track.** Where defendant railroad company knows that the public are in the habit of using its track as a footpath, it is the duty of engineers in charge of its trains to be on the lookout for persons using it there. But even then the engineer is not chargeable with notice that a man is lying on the track, and hence the fact that the engine strikes a man lying on the track is not itself sufficient to justify the inference that the engineer saw him or that he failed to use ordinary care to discover him in time to avoid killing him.

4. ———: ———: ———: **Intoxicated Plaintiff.** For a mile south of town the public were in the habit of using defendant's track as a footpath, and at the end of that mile was a private crossing. Plaintiff, in a state of intoxication, walked down the footpath to the crossing, and just north of it sat down on the end of a cross-tie, and then all consciousness ceased and his memory of events ended, but later a north-bound train, running thirty or forty miles an hour, struck him. A witness who was approaching the crossing from the east saw the train coming and waited within about thirty-five yards of the track for it to pass, but did not see plaintiff. The day was clear, the engineer's view unobstructed, and there was no evidence that he saw him in time to avoid hitting him, and he testified that he was at his post looking north, that he did not see plaintiff until he was within 150 feet of him, that plaintiff was then lying on the west side of the west rail, his body showing about five or six inches above the rail. *Held,* that the natural inference from plaintiff's evidence is that he, as a result of the stupefaction, had fallen into a recumbent position, and there being nothing in the case to indicate that the engineer, after seeing plaintiff in the dangerous position, could, by the exercise of ordinary care, with the means at hand, have stopped the train in time to have avoided hitting him, the court properly sustained a demurrer to the evidence.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*John T. Barker* and *Conkling & Rea* for appellant.

(1)   Notwithstanding appellant was a trespasser and guilty of contributory negligence, the railroad company is still liable for the injury, if it saw, or by the exercise of ordinary care could have seen, the dangerous position he was in, in time to have averted the calamity.   The law is well settled in this State that the party who has the last fair opportunity of avoiding the accident is not excused by the negligence of any one else.   Fearons v. Railroad, 180 Mo. 208; Scullin v. Railroad, 83 S. W. 760; Klockenbrink v. Railroad, 172 Mo. 678; Morgan v. Railroad, 159 Mo. 262; Chamberlain v. Railroad, 133 Mo. 587; Reardon v. Railroad, 114 Mo. 384; Guenther v. Railroad, 108 Mo. 18; Fiedler v. Railroad, 107 Mo. 645; Werner v. Railroad, 81 Mo. 368; Inland Co. v. Tolson, 139 U. S. 557; Railroad v. Ives, 144 U. S. 408; Meyers v. Railroad, 99 Mo. App. 363; McAndrew v. Railroad, 88 Mo. App. 97; Deans v. Railroad, 107 N. C. 686.   (2)   The Gates Crossing, and the railroad track of defendant from this crossing on into LaPlata, having been used for more than fifteen years by the entire public as a footpath, and having been used to a considerable extent by the public in riding bicycles over and along the track and driving stock thereon, defendant's employees should have taken notice of such practices and might have reasonably anticipated that persons would be on the track at this point.   It was, therefore, their duty to keep a careful lookout in order to discover such persons and prevent injuring them. If they failed to do so, and if the injury to Ayers resulted from such failure, then plaintiff was entitled to recover.   Fearons v. Railroad, 180 Mo. 208; Scullin v. Railroad, 83 S. W. 760; Morgan v. Railroad, 159 Mo. 262; Chamberlain v. Railroad, 133 Mo. 587; Kries v. Railroad, 131 Mo. 533; Guenther v. Railroad, 108 Mo. 18; Fiedler v. Railroad, 107 Mo. 645; LeMay v. Railroad, 105 Mo. 361; Lynch v. Railroad, 111 Mo. 601;

Powell v. Railroad, 59 Mo. App. 626; Garner v. Trumbull, 94 Fed. 321; Cahill v. Railroad, 74 Fed. 288; Ashworth v. Railroad, 116 Ga. 635; Bullard v. Railroad, 116 Ga. 655; Arrowood v. Railroad, 126 N. C. 629; Fleming v. Railroad, 106 Tenn. 374; Railroad v. Crosnoe, 72 Tex. 79; Railroad v. White, 84 Va. 498; Corbett v. Railroad (Utah), 71 Pac. 1065; Mason v. Railroad, 89 Wis. 151; Barry v. Railroad, 92 N. Y. 289; Railroad v. Wymore (Neb.), 58 N. W. 1120; Shearman & Redfield on Negligence, sec. 493. (3) It was a question for the jury to say whether such use of this track was of such long standing and of such a nature and extent, as to impose on the employees of defendant, on approaching this point, the duty of anticipating the probable presence of persons on the track. Garner v. Trumbull, 94 Fed. 321; Railroad v. Lowell, 151 U. S. 209; Hansen v. Railroad, 105 Cal. 379; Taylor v. Canal Co., 113 Pa. St. 162; Railroad v. Rogers, 100 Va. 324; Troy v. Railroad, 99 N. C. 298. (4) It appears from the evidence of defendant's engineer that he was looking up the track toward this crossing, continuously, from a distance of one-third of a mile south thereof, and as plaintiff was on the track at this point, and there were no obstructions of any kind from this point south to the approaching train, then the jury might reasonably have said that defendant's engineer actually saw plaintiff for a sufficient distance within which to have stopped his train. And as plaintiff was sitting on the track, the presumption that he would leave the track did not apply. (5) The following authorities show that we were not bound by the naked statement of the engineer, but were entitled to have the jury say, from all the facts and circumstances in evidence, whether or not plaintiff could have been discovered sooner. And especially so when we proved by numerous witnesses that plaintiff could have been seen in this position for at least 2,000 feet: Campbell v. Railroad, 175 Mo. 161; State ex rel. v. Branch, 151 Mo. 642;

Imhoff & Co. v. McArthur, 146 Mo. 371; Gannon v. Gas Company, 145 Mo. 502; Spurgin Gro. Co. v. Frick, 73 Mo. App. 128. (6) While plaintiff placed defendant's engineer upon the stand, he was only questioned as to the train's being equipped with modern appliances, and the evidence regarding the distance within which plaintiff could have been seen was brought out by defendant on cross-examination. This being true, the witness was defendant's witness as to the new matter brought out. Anderson v. Railroad, 161 Mo. 411; State ex rel. v. Branch, 151 Mo. 641; Hume v. Hopkins, 140 Mo. 65.

*Geo. S. Grover* for respondent.

(1) Upon the undisputed facts in this case, it was the plain and absolute duty of the judge below to direct, as he did, a verdict in the defendant's favor. Zumault v. Railroads, 175 Mo. 288. (2) The cross-examination of the engineer is plaintiff's evidence, and the engineer is plaintiff's witness. This is the rule adopted by this court: Page v. Kankey, 6 Mo. 433; Railroad v. Silver, 56 Mo. 265; State v. Jones, 64 Mo. 391; State v. Soper, 148 Mo. 234. And the rule of the United States Supreme Court: Railroad v. Stimpson, 14 Pet. 448.

VALLIANT, J.—Plaintiff was struck by a locomotive on defendant's railroad and suffered personal injuries; he brings this suit for damages. The negligence ascribed to the defendant in the petition is failure to sound the bell or whistle on approaching the point where plaintiff was, and failure of the engineer to use the appliances at hand to stop the train in time to avoid striking the plaintiff after seeing him in a position of peril or after the engineer by ordinary care might have seen him. The petition states that defendant's track was and had been for many years a well-

recognized public path for pedestrians, with the knowledge and consent of defendant, and that plaintiff was on the track when he was struck, but it omits to say what he was doing or in what position he was. The answer was a general denial and contributory negligence.

The evidence for the plaintiff tended to prove as follows:

Defendant's railroad runs north and south through the town of LaPlata. There is a well-beaten foot-path in the track, and for many years the people in that vicinity, men, women and children, habitually used the path in going to and from the town. About a mile south of LaPlata there is a private crossing over the railroad, called Gate's crossing. From that point, looking south, the track for a half mile or more is level and straight, with nothing to obstruct the view. In the afternoon of a clear day, January 8, 1902, the plaintiff had been to town, became intoxicated and started home walking in the foot-path in the track, going south. When he got as far as Gate's Crossing he sat down on the west end of a cross tie and then and there all consciousness ceased and his memory of events ended.

A regular north-bound passenger train, running about forty miles an hour, came along and struck him, inflicting serious injuries. As the engine approached Gate's Crossing there was no signal given by bell or whistle; the train ran a quarter of a mile past the crossing before it stopped, then backed and took the plaintiff on. Gate's Crossing was constructed by cross-ties laid lengthwise the track, with plank on the ties. The plaintiff was sitting on the west end of a cross-tie a few feet north of the crossing.

Sinnock, the only witness for the plaintiff near this crossing at the time of the accident, testified that he was approaching the track from the east, and when he got within about thirty-five yards of the crossing he saw the train coming from the south and waited for it to

pass; he did not see the plaintiff until after the accident.

There was evidence tending to show that this train running at the rate of thirty, thirty-five or forty miles an hour, as some of the witnesses thought it was, could have been stopped within three hundred or four hundred feet.

The plaintiff called as a witness the engineer who was operating the locomotive at the time of the accident, and interrogated him on two subjects, that is, asked him how the engine was equipped and what kind of a day it was; then the witness was turned over to the attorney for the defendant for cross-examination, and was examined in regard to the accident, in which examination he stated that when at his post on a level-straight track he could see from a half to three-quarters of a mile ahead, that this track was level and straight for about a quarter of a mile south of Gate's Crossing, that on this occasion he was at his post on the east side of the cab, looking north, he was running a little over forty miles an hour, at that speed the train could not be stopped shorter than within six hundred or seven hundred feet, that he did not see the plaintiff until he was within one hundred and fifty feet of him, the plaintiff was then lying on the west side of the west rail, his body showing about five or six inches above the rail, as soon as he saw him he used every effort and means at hand to stop, but it was too late, it was then impossible to stop in time to prevent striking him, the position of the plaintiff on the track was such that the witness could not have discerned him sooner than he did.

At the close of the plaintiff's evidence the court, at the request of defendant, gave an instruction to the jury to find for the defendant; the jury rendered a verdict accordingly and the judgment for defendant followed. The plaintiff has appealed.

The only question for decision is, was the plaintiff

entitled to have his case submitted to the jury under instructions authorizing a verdict in his favor under any view of the evidence?

The plaintiff insists that the testimony of the engineer to the effect that he was at his post and looking, yet he did not see him until it was too late and that as soon as he discovered him he did everything possible to avert the injury, is not the plaintiff's evidence, and did not justify the court in giving the peremptory instruction. The proposition is that the engineer was the plaintiff's witness only in reference to the subjects on which he was examined by plaintiff and as to the rest he was defendant's witness.

The question of latitude allowed in cross-examination of an adversary's witness has led to the adoption of one rule in some jurisdictions and a different one in others. A distinguished text-writer on this subject calls one the orthodox rule, and the other the Federal rule (3 Wigmore on Evidence, sec. 1885, et seq.), and quotes for the orthodox rule, Fulton Bank v. Stafford, 2 Wend. 483-485: "When a witness has been sworn in chief, the opposite party may not only cross-examine him in relation to the point which he was called to prove, but he may examine him as to any matter embraced in the issue. He may establish his defense by him without calling any other witness. If he is a competent witness to the jury for any purpose, he is so, for all purposes." For the Federal rule the same text-writer quotes from Judge STORY in Railroad v. Stimpson, 14 Pet. 448, 461: "The answers in controversy were inadmissible upon the broader principle (now well established, although sometimes lost sight of in our loose practice at trials) that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine as to other matters, he must do so by making the witness his own, and calling him, as such, in the subsequent progress of

the cause." What is there called the orthodox rule has always been the rule in this State. [Page v. Kankey, 6 Mo. 433; Railroad v. Silver, 56 Mo. 265; State v. Jones, 64 Mo. 391; State v. Soper, 148 Mo. 234.] The learned author above named, after an exhaustive discussion of the subject, says, in section 1895: "The rule under consideration is concerned solely with the order of *presenting evidential material;* the assumption is that the fact may be proved on direct examination at a later stage, and the only question is whether it may be elicited during the earlier stage." That is really the only essential difference in effect between the two rules. Under what is called the Federal rule the defendant may cross-examine the plaintiff's witness on the subject of his examination in chief and afterwards when defendant comes to introducing his evidence he may recall the witness and examine him on other subjects, making him as to those matters his own witness. Under our rule the defendant need not wait until the time for introducing his evidence has come, but may examine the witness before he leaves the stand on other subjects, yet as to these other matters he is the defendant's witness; the testimony is the defendant's and not the plaintiff's. [Hume v. Hopkins, 140 Mo. 65; State ex rel. v. Branch, 151 Mo. 622 l. c. 641; Anderson v. Railroad, 161 Mo. 411.] In such case if the plaintiff had by other evidence made out a prima facie case, the court could not take it from the jury on account of testimony brought out by defendant in the examination of the plaintiff's witness touching matters that had not been referred to in the direct examination. Such testimony would be the same in effect as if the witness had, as in conformity with the Federal rule, come down from the stand and been recalled by the defendant after the plaintiff had closed his case. The only difference, as the text-writer above quoted says, is in the order in which the testimony is introduced. Involved in this subject is the question of the

right of the plaintiff to cross-examine the same witness on the new subject on which the defendant has examined him, and the right of the plaintiff after having closed his case in chief. to bring out testimony not strictly in rebuttal by examining defendant's witnesses on subjects upon which defendant had not examined them. Those questions, however, are not in this case, but they are scientifically discussed by the text-writer above quoted, citing and reviewing numerous decisions on the subject.

It is not clear, however, from the record in the case at bar that the plaintiff did not make this engineer his witness on the disputed point; he asked him if his engine was equipped with modern appliances and if it was not a bright day. The only significance of the modern appliances was the facility for stopping the engine and the only point to be attained in proving that the day was clear was to show that the engineer must have seen the man on the track if he was at his post and doing his duty.

We have thus discussed the subject of the examination of an adversary's witness, not because it is a vital question in this case, but because the counsel on both sides have discussed it in their briefs, for even if all that the plaintiff claims on that point be conceded, and if we disregard entirely the evidence the engineer gave on cross-examination, the plaintiff made out no case for the jury.

There is no statute requiring the defendant to give a signal by bell or whistle on approaching a private crossing; its duty to do so depends on the circumstances of the case. There was, therefore, no negligence *per se* in failing to sound the bell or whistle. The plaintiff was guilty of negligence in placing himself in the position of danger. And taking the plaintiff's own account of his condition it leaves little room to infer that the sound of the bell or whistle would have had any effect on him. This reduces the case to a question of whether

the engineer, after seeing the plaintiff in the position of danger, or after he could have seen him if he had been looking, could by the exercise of ordinary care, with the means at hand, have avoided the accident.

The evidence showed that although this occurred on defendant's right of way and where there was no public crossing, yet it was where the defendant knew that the public was in the habit of using the railroad track for a footpath and therefore it was the duty of the engineer to be on the lookout for persons so using the track. If this man had been walking or standing on the track he could have been seen by the engineer in time at least for a danger signal to have been given, but lying as he was on the west side of the track he was not as conspicuous as a person walking or standing would have been.

The engineer was not chargeable with notice that a man was liable to be found lying on the track, and therefore the fact that the engine struck the plaintiff in that position is not in itself sufficient to justify the inference either that the engineer saw him or that he failed to use ordinary care to discover him in time. The plaintiff's testimony, aside from that of the engineer, does not undertake to expressly show his attitude. He sat down on the west end of a cross-tie and there the stupefaction of intoxication overcame him, and there the plaintiff's evidence leaves the result to inference. The natural inference is that he fell into a recumbent position.

Some of the plaintiff's witnesses said that from a standpoint a quarter or half mile south on a clear day one could see a "small object" at Gate's Crossing. The term "small object" in that connection is indefinite and means nothing. Besides, unless the witness is giving the result of an actual experiment or experience, the evidence is incompetent; given a straight, level track and a clear day, the jury were as competent as the witnesses to say how far a given object could be seen.

The only witness of plaintiff (not counting the engineer) who was near enough to the accident to have seen the plaintiff on the track if he had been visible to ordinary observation said he did not see him until after the accident, although he saw the train coming and waited for it to pass.

There is no room for the application of the humanitarian doctrine in this case. The learned trial judge had the right view of the subject. The judgment is affirmed. *Brace, C. J.,* concurs; *Marshall* and *Lamm, JJ.,* concur in the result, but are of the opinion that the engineer put on the stand by plaintiff was plaintiff's witness throughout and all his testimony in chief, as well as on cross-examination, was to be taken as part of plaintiff's case.