Raymond **HONEYCUTT** and Bertha Honeycutt, Respondents,

v.

**MISSOURI PACIFIC RAILROAD COMPANY**, Appellant.

No. 53769.

Supreme Court of Missouri, Division No. 2.

April 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied May 12, 1969.

Wesner, Wesner & Meyer, Robert L. Wesner, Sedalia, for respondents.

Charles H. Howard, Hendren & Andrae, Jefferson City, William K. Gibson, Martin, Gibson & Gardner, Sedalia, for appellant.

BARRETT, Commissioner.

Raymond Honeycutt, a farm laborer, and his wife, Bertha, have been awarded $21,500.00 damages against the Missouri Pacific Railroad for his personal injuries and her loss of services. Ray was employed by the TP Company and on June 15, 1966, was engaged together with Niles Forbes in harvesting the oat crop on the Cloney farm 2.3 miles north of Sedalia. Forbes was operating the combine and Ray was hauling the threshed grain to storage in a wagon attached to a farm tractor. The railroad's Lexington Branch, since abandoned, runs through the Cloney farm and affording access to the separated tracts is a private road and a crossing built and maintained by the railroad. About 3 o'clock in the afternoon, with his 3rd or 4th load, as Ray proceeded on his way to the granary from the east field to the west field down the private road and over the crossing his tractor was struck by the Missouri Pacific's northbound "one-a-day" train and he was so injured that he had no recollection of the train. He said, however, that as he approached the crossing he looked and listened but did not see or hear a train. Thereafter he changed gears and at a speed of one to one and a half miles an hour traveled 35 to 40 feet upgrade to the crossing without stopping. There was no signal by the oncoming train. He said that by reason of trees, weeds, brush and blackberry vines he could see "(j)ust a little, but not very darn much" to the north. He said that at the crossing the brush and weeds were within 12 to 14 feet of the ends of the ties and only in the middle of the track could one see down the track a quarter of a mile to a curve. Ray said that because of the brush and trees he could not see anything "until you get out to the track."

Forbes said that he saw the train coming at a speed of 40 miles an hour; stepped off his combine and waving a handkerchief attempted to warn the train crew, "I was aiming to stop him," the engineer waved back but did not heed the warning. Forbes also described the trees and brush and said that Ray "couldn't see nothing until he drove on the track." As to whether the engineer could see Ray, he said, "I don't see how he could have where he was coming." He too said that the train gave no signal and as to its noise said, "I would say it didn't have the power on for it didn't make enough racket." And then he heard a "Big bang. I knew then what happened."

Ray and Forbes were corroborated in large measure by the engineer who said that the track was downgrade from the curve a quarter of a mile and he was probably coasting and saw the tractor "just moments before" it was hit, "I just seen the front end approaching from behind the brush there." He said that he could not see more because of the "brush and weeds there," he said the tractor was but 3 to 4 feet from the rail when he first saw it. He said of the surroundings, "It was brushy and straight downhill" and if one "stuck" his head out of the locomotive he would "probably get hit maybe. Sometime or other. Through limbs sticking out." The track was straight for a quarter of a mile, the engineer could see the roadbed ahead but "on account of the brush" he could not see the crossing. He said that he last sounded the whistle at the U.S. 65 Highway crossing about one-third of a mile from the farm crossing. When he finally saw the tractor "I bent to my emergency," the tractor was then but 50 feet away and at a speed of 20 to 25 miles an hour he could not stop the train before it struck the tractor. The train traveled "about fourteen cars," about 1000 feet, before stopping and at that point because of the "cars, brush and stuff" he could not see back to the crossing. In describing the roadbed the engineer said, "(i)t was a rough piece of track."

The appellant railroad contends that the court erred in not sustaining its motions for judgment for the reasons that Ray was guilty of contributory negligence as a matter of law, and that plaintiffs "failed to plead and submit a cause of action against defendant, as defendant was not under a duty to keep its right of way clear of vegetation." In any event the railroad contends that it is entitled to a new trial because Instructions 2 and 3 violate Civil Rule 70.01, V.A.M.R. and erroneously submit "an issue of general negligence" and "failed to make a causal requirement between the charged negligence and the collision." It is not necessary to examine each of these claims in detail or to further set forth the facts and circumstances. It should be noted in passing that appellant does not argue that in no event do plaintiffs have a cause of action, the specific assignment by which it is bound is that there was "no duty to keep its right of way clear of vegetation." In support of its basic contention of no duty to keep its right-of-way clear the railroad relies on a Kentucky case and two cases from Alabama. These cases, particularly in view of numerous relevant Missouri decisions, are less than helpful and have served only to obscure fundamental problems. To illustrate, the rationale of the Kentucky case, Spalding v. Louisville and N. R. Co., 281 Ky. 357, 136 S.W.2d 1, is that private ways and crossings "when otherwise not qualified by contract or obligatory terms in their creation, *impose no duty upon the servient estate* to maintain them in a safe traveling condition. On the contrary, *such duty is imposed upon the dominant estate,*" therefore there was as to the plaintiff, a total stranger to the private road, no duty on the railroad to maintain "the safety of the private passway for travel." (Emphasis supplied.) In the earlier Alabama case, Atlantic Coast Line R. Co. v. Carter, 214 Ala. 252, 107 So. 218, there was in the first place "a contract in writing, into which the defendant company and the landowner entered in 1916," but basically the rationale of the case is twofold; one, the rule in that jurisdiction is that "the only duty resting upon defendant's engineer was to avoid injuring intestate after becoming aware of his presence and peril" and, second, as to weeds and other obstructions deceased "was a mere licensee, he took the crossing as he found it." The second Alabama case, Alabama Great Southern R. Co. v. Johnston, 281 Ala. 140, 199 So.2d 840, as appellant points out in distinguishing respondents' cases involved an instance of "driving an automobile into a moving train on a *public crossing.*" And even there, citing the Carter case, the court made a distinction as to "*unnecessary obstructions such as*

*trees, bushes, and tall grass"* as a circumstance.

The one Missouri case relied on by the railroad, Wright v. St. L.-S. F. Ry. Co., 327 Mo. 557, 37 S.W.2d 591, all but completely refutes its claim that Ray was guilty of contributory negligence as a matter of law in driving onto the crossing. There the obstruction was boxcars on a siding and the court said, in all the circumstances, "it cannot be held that his failure to look at the time and place was negligence as a matter of law." And see, in addition, on contributory negligence as a jury question, Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64; Zumault v. Wabash R. Co., Mo., 302 S.W.2d 861; and Rentfrow v. Thompson, 348 Mo. 970, 156 S.W. 2d 700, 703: "It is not, however, ordinarily necessary for him to leave his automobile and to go ahead and reconnoiter." This line of cases is to be contrasted with the recent case of Davenport v. Wabash R. Co., Mo., 435 S.W.2d 641, applying the rule, inapplicable to the present circumstances, indicated by the last headnote: "Where it would not have been possible for motorist to have failed to see southbound train if he had looked to north from almost any point as he was driving toward railroad crossing, his failure to look constituted negligence and his widow was not entitled to recover from railroad in wrongful death action."

On the other hand, the statutes (RSMo 1959, §§ 389.650 and 389.660, V.A.M.S.) and cases relied on by the respondents also miss the mark. The instances of obstructions on private crossings, a fallen telephone wire in which a mule colt became entangled (Stewart v. Quincy, O. & K. C. R. Co., 142 Mo.App. 322, 126 S.W. 1003), or a grindstone on the brush-covered right-of-way scaring a lady's horse (McGolderick v. Wabash R. Co., 200 Mo.App. 436, 200 S.W. 74), or a case governed by the law of Kansas even though it involved high weeds and a failure to give a statutory signal (Van Buskirk v. Missouri-K.-T. R. Co., Mo., 349 S.W.2d 68) are not helpful

to a resolution of the fundamental question involved in this appeal.

Upon the essential merits of the cause the authoritative, if elusive, authorities are the Missouri cases dealing with similar factual situations and the rules to be distilled as they relate to obstructions and vehicular collisions on private roads and so-called private railroad crossings. In this connection it is not necessary to repeat the noted essential factual circumstances and demonstrate in each instance the precise meaning and bearing of each decision. Starting with the earliest case (1905) all unearthed after considerable research, Ayers v. Wabash R. Co., 190 Mo. 228, 88 S.W. 608, involving an intoxicated pedestrian who in using a "footpath" sat down on the end of a crosstie and "there all consciousness ceased and his memory of events ended." While a verdict was there properly directed for the railroad, these observations by the court are pertinent:

"There is no statute requiring the defendant to give a signal by bell or whistle on approaching a private crossing. *Its duty to do so depends on the circumstances of the case.* * * * And, taking the plaintiff's own account of his condition, it leaves little room to infer that the sound of the bell or whistle would have had any effect on him. This reduces the case to a question of whether the engineer, after seeing the plaintiff in the position of danger, or after he could have seen him if he had been looking, could, by the exercise of ordinary care, with the means at hand, have avoided the accident.

"The evidence showed that although this occurred on defendant's right of way and where there was no public crossing, yet it was where the defendant knew that the public was in the habit of using the railroad track for a footpath, and therefore it was the duty of the engineer to be on the lookout for persons so using the track. If this man had been walking or standing on the track, he could have been seen by the engineer in time, at

least, for a danger signal to have been given; but, lying as he was on the west side of the track he was not as conspicuous as a person walking or standing would have been."

Thus there was no room for the application of the humanitarian doctrine—the point is, however, that had the circumstances met the test the doctrine was applicable to a "footpath," a place other than a public crossing. In Bryant v. Missouri Pac. R. Co., 181 Mo.App. 189, 168 S.W. 228, the plaintiff was injured on "a private farm crossing" when a bolt on his hay baler became caught on a rail and the train frightened his mules as he rescued them. There was a fact question of "public user" but pertinent here the court said, "but *as to a farm crossing* not so used, *the company would owe no duty to maintain it in repair to anyone but the owner of the farm, his family and servants."* (Emphasis supplied.) And there again the court considered, assuming plaintiff to be a trespasser, whether there was a humanitarian case.

A more authoritative and frequently cited case is Boland v. St. L.-S. F. Ry. Co., Mo., 284 S.W. 141. There a "private farm crossing" was obstructed by freight cars. There, as appellant argues, it was held that the statute relating to signals did not apply to private crossings. Nevertheless, as to a guest in an automobile, the court approvingly quoted a text:

"*But a railroad is bound to exercise reasonable care* in the operation of its train and to avoid injury to persons and animals *at all crossings, private as well as public;* and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen, ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. *The question is one for the jury to determine on common law principles."*

This it may be noted is but the application of the most elemental of tort doctrines or rules. It is not necessary to indicate in this case whether any such "peculiar or extraordinary circumstances," are present—it is sufficient to note, contrary to the railroad's argument, that it does owe some duty at a so-called private crossing.

A case very much in point, involving obstructions as well as duty is Fowler v. Missouri-K.-T. R. Co., 229 Mo.App. 561, 84 S.W.2d 194. The case is too detailed to fully note here but it was an action for the death of the plaintiff's son, age 6, who was killed when his father's mule-drawn wagon was struck by an eastbound train on a crossing one mile east of Wainwright. There as here the plaintiff husband testified that he could not see or hear approaching trains because of "bluffs, trees, the contour and formation of the land, the number, size and height of the weeds, trees and brush on defendant's right of way." It was held in the first place, that the plaintiff father was not guilty of contributory negligence as a matter of law. But as to the railroad's negligence and liability the court said:

"* * * regardless of the fact, if it be a fact, that the warning as a statutory warning was not required by the statute to be given by defendant as it approached the crossing in question, *it was still required, under the common law, to give warning in the performance of its duty to plaintiff* Orville Fowler and others with him. The conditions surrounding this crossing were such that it was bound to know that they were unusual and that the roadway was thereby rendered more dangerous by reason of the approach thereto than if the surrounding conditions had not existed; and it was its duty to have taken ordinary precautions such as were commensurate with and required by the circumstances surrounding to protect persons approaching the crossing for the purpose of crossing thereon, that might not have been required under other conditions."

At another point, dealing with an instruction, the court continued:

"(i)t merely submits to the jury the question of fact as to whether the view of such persons so approaching the crossing from the west was *so obstructed by weeds, trees, and brush as to endanger the safety of persons so approaching thereto.* There is ample evidence in the record to justify such instruction; and *the jury was merely advised that if, in connection with other facts hypothesized, it found such facts to be true, then a verdict for plaintiffs was authorized.*"

In time sequence and likewise significant here is Flint v. Chicago, B. & Q. R. Co., 357 Mo. 215, 207 S.W.2d 474, an action for the death of a boy, a guest in a truck hit by a train at a private crossing. The case was submitted on primary negligence of failure to warn and humanitarian negligence of failure to stop or slacken speed. One of the factual considerations was weeds "five or six feet high, between the right-of-way line (at the corner post) and the railroad embankment, although some weeds were much higher than the rest. These weeds came within 8 or 10 feet (cut back two swaths) of the east side of the roadway." The proof was held to be insufficient for a humanitarian case of failure to stop or slacken speed but as to the railroad's claim of error in submitting primary negligence of failure to signal the court described the circumstances surrounding the crossing and said "this evidence was sufficient to make a jury issue on public use of this crossing sufficient to impose a common law duty to warn under the circumstances of this case."

The most recent Division 2 case concerned with this problem is Dickerson v. Terminal R. Ass'n of St. Louis, Mo., 284 S.W.2d 568. There a switch engine in a General Motors plant backed into a truck as it proceeded over one of the switch tracks in the enclosure. The court distinguished "farm crossings" from the one there involved on the basis that "defendant (railroad) was operating in this plant for the *joint benefit* of itself and General Motors, knowing that employees must and did frequently cross its tracks." In any event, applying Boland v. St. L.-S. F. Ry. Co., the court said, even though the statute as to specific crossing warnings was not applicable, "yet *there is a common law duty to use reasonable care to avoid injury at all crossings, public or private, by warnings or otherwise.*" The Missouri cases, including the Boland, Flint, Bryant and Fowler cases, were most recently examined in Gulf, M. & O. R. Co. v. Thornton, 8 Cir., 294 F.2d 104, in which it was concluded in those particular circumstances that "the evidence as a whole and the inferences fairly deducible therefrom warranted the trial court in denying the motions and holding the 'user-crossing' question as one of fact for the jury."

This is not to indicate upon what theory and hypothesis the plaintiffs may or may not have a cause of action. It is to say, however, as these cases all clearly indicate, that there are possible bases for liability. The difficulty here is that plaintiffs' two counts were submitted alone upon the hypothesis and theory that "defendant permitted its right of way to grow up in weeds, brush and undergrowth close to the crossing, and second, that such weeds, brush and undergrowth was so close to the crossing that it obstructed the view of plaintiff and defendant's engineer, so that persons using the crossing were exposed to a danger of collision with defendant's trains." As indicated by, among others, the Flint and Fowler cases, obstructions including weeds, brush and trees, are circumstances to be considered with other factors, but standing alone at a private crossing (compare, Price v. Barnard, 70 Mo.App. 175) are not sufficient, as the cases now stand, to sustain a cause of action. The consequence is that the plaintiffs have submitted the railroad's liability and their right to recover upon a theory for which there is no evidentiary support and for that reason therefore the cause must be reversed and

remanded. Brassfield v. Sears, Mo., 421 S.W.2d 321; Knollman v. Kennedy, Mo. App., 429 S.W.2d 775; Wolfe v. Harms, Mo., 413 S.W.2d 204.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, J., concurs.

FINCH, P. J., concurs in result in separate concurring opinion filed.

MORGAN, J., concurs in result and concurs in concurring opinion of FINCH, P. J.

FINCH, Presiding Judge (concurring).

I concur in the result reached in the principal opinion but would be more specific with reference to a retrial.

■ At the outset, I agree that the evidence did not establish that plaintiff [1] was guilty of contributory negligence as a matter of law and that this issue properly was submitted to the jury for its determination.

I do not consider that any Missouri case up to now has ruled on the question of whether conduct of a railroad in permitting weeds and brush to grow on its right of way can constitute negligence which will sustain a verdict against the railroad in favor of one injured at the crossing. The case of Fowler v. Missouri-K.-T. R. Co., 229 Mo.App. 561, 84 S.W.2d 194, cited in the principal opinion, recognizes that such conditions may be considered in determining the railroad's duty to warn, but the appeal did not involve the issue of whether plaintiff could recover on that basis as actionable negligence. The petition in Fowler contained such an allegation of

negligence but the case was not submitted to the jury on that issue.

■ It also seems clear that there is no statutory duty in Missouri on which plaintiff can rely to sustain a judgment based merely on failure to cut the weeds as constituting negligence. The only statutory duty on defendant to cut weeds and brush on its right of way is prescribed in § 389.660(2) (all references are to RSMo 1959, V.A.M.S.). That statute expressly requires removal of all "dead or dry vegetation and undergrowth upon the right of way", this being "for the purpose of preventing the spread of fire and the destruction of property". The statute requires that this be done between the first and fifteenth days of August, and between the fifth and twenty-fifth days of October, in each year. That section does not create a statutory duty the breach of which constitutes negligence for which plaintiff can recover herein. Plaintiff also cites § 389.650(3), which requires the railroad to build and maintain farm crossings, but that section does not provide for any statutory duty of the railroad to cut weeds and undergrowth on its right of way adjacent to such farm crossings.

There are cases in other states which have permitted recovery on the theory that permitting growth on the right of way adjacent to a crossing so as to obstruct the view of approaching trains constitutes negligence. For example, in Corley v. Atchison, T. & S. F. R. Co., 90 Kan. 70, 133 P. 555, 1. c. 556, the court upheld a verdict for plaintiff and concluded with this statement: "It follows that it was proper in the present case to submit to the jury the question whether the defendant permitted the crossing to be rendered unnecessarily dangerous by allowing needless obstructions to the view, and that a finding of negligence in that regard is sufficient to support a judgment." See also Burzio v. Joplin & P. Ry. Co., 102 Kan. 287, 171 P. 351, L.R.A.1918C, 997, and Adams v.

---

[1]. The term "plaintiff" when used herein includes both plaintiffs when appropriate.

Missouri-K.-T. R. Co., 119 Kan. 783, 241 P. 1086. The latter opinion seems to recognize that this is a minority view.

The view that permitting such growth is not actionable negligence in and of itself is expressed in Cowles v. New York, N. H. & H. R. Co., 80 Conn. 48, 56, 66 A. 1020, 1. c. 1023, 12 L.R.A.,N.S., 1067, wherein th court said: "The view of the trial court that the neglect of the defendants to cut down the trees and bushes upon their land which obstructed a view of their tracks from travelers passing on the highway was in itself a violation of the defendants' legal duty, and therefore constituted actionable negligence, finds support in some authorities. C. & E. I. R. R. Co. v. Tilton, 26 Ill. App. 362, 366; T. H. & P. R. R. Co. v. Barr, 31 Ill.App. 57, 60; 2 Thompson on Negligence, §§ 1507, 1508. The contrary view finds support in Cordell v. N. Y. C. & H. R. R. R. Co., 70 N.Y. 119, 26 Am.Rep. 550; Nashville C. & St. L. R. R. Co. v. Witherspoon, 112 Tenn. 128, 78 S.W. 1052; A. T. & S. F. R. R. Co. v. Hawkins, 42 Kan. 355, 22 Pac. 322; C., R. I. & P. Ry. Co. v. Hinds, 56 Kan. 758, 44 Pac. 993; Shearman & Redfield on Negligence, § 478; Baldwin on American Railroad Law, p. 402. We have never before had occasion to discuss this question, and must therefore treat it as an open one. For the reasons above suggested, we are satisfied that, while trees growing upon land adjacent to the highway, including land owned by the railroad company, which substantially obstruct the view of a traveler approaching the grade crossing, is clearly one of the circumstances, to be considered in determining whether the railroad company exercised ordinary care in the operation of its cars at a particular time, yet the mere neglect of the company to cut down trees on its own land although proper to be considered with all the surrounding circumstances affecting the care required at that time is not in itself a violation of any legal duty the company owes to a passing traveler (unless so made by statute), and it not therefore in the absence of any other negligence a neglect which constitutes actionable negligence."

A similar view is expressed in Cordell v. New York C. & H. R. R. R. Co., N. Y., 70 N.Y. 119, wherein the court said, 1. c. 123: "The obstructions in this case may, and perhaps should, have had a material bearing upon two questions: First, as to the contributory negligence of the plaintiff. If they prevented his seeing the approaching train until he arrived at the track, he would not be negligent for not seeing it before, and secondly, the fact of the existence of those obstructions, with the other surrounding circumstances, were proper to be considered upon the question of the degree of care and vigilance which the defendant was bound to exercise in the running and management of its train, and in giving warning of its approach. It cannot be an independent ground of recovery."

I have reached the conclusion that the rule as expressed by the Connecticut and New York courts is the better one and I would adopt it. Actually, this is in harmony with what was said in Fowler v. Missouri-K.-T. R. Co., supra.

The principal opinion correctly points out that courts of this state have recognized that there can be a common law duty to warn at private crossings. Fowler v. Missouri-K.-T. R. Co., supra; Boland v. St. Louis-San Francisco R. Co., Mo., 284 S.W. 141. In my judgment, the evidence which was introduced in this case would be sufficient to sustain a finding by a jury that defendant did have a duty to warn and that the failure so to do was negligence. Concededly, no warning of any kind was given within one and three-tenths miles of this private crossing.

Plaintiff's petition actually alleged as one assignment of negligence that defendant, knowing of the growth adjacent to the crossing and of the hazardous condition thereby created, should have warned plaintiff by bell, whistle or otherwise of the approach of the train and negligently failed so to do. However, that issue was not submitted to the jury. In view of my conclusion that plaintiff can make a case on

the issue of failure to warn, I would reverse and remand so as to give plaintiff an opportunity to retry his case on that basis. I do not mean to infer that plaintiff could not submit on some other ground of negligence if the evidence justifies, but I do believe we should recognize that the evidence introduced would sustain a verdict based on a finding of failure to warn and that such failure was negligence.

■ Finally, I observe the defendant offered no testimony with respect to the extent of plaintiff's injuries. Furthermore, defendant's brief in this court says that, "Defendant has not made a statement of facts as to the injuries and damages claimed, as no issue is briefed on this appeal as to injuries and damages." Defendant is the appellant and has not made an issue of the amount of the recovery. Under those circumstances, there would appear to be no useful purpose in having a retrial on the issue of the extent of damages. The issue presented is one of liability. Consequently, I would reverse and remand for trial on the issue of liability only.