OF THE

# STATE OF MISSOURI,

AT THE

OCTOBER TERM, 1892.

*(Continued from Volume 112.)*

MAXEY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division One, December 13, 1892.

1. **Railroad:** INJURY AT CROSSING: CONTRIBUTORY NEGLIGENCE. One who approaches a railroad track and without looking or listening or giving any attention to his surroundings steps thereon, and is almost immediately struck by a passing train, is guilty of such contributory negligence as to prevent his recovery for the injuries so received, though the train was an extra one and no signal was given of its approach.

2. ———: CROSSING: SIGNALS. Where a railroad crossing is not a public one, no signals are required to be given by those in charge of an approaching train.

*Appeal from Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

VOL. 113 (1)

ACTION for damages for personal injuries caused by plaintiff being struck by the tender of a construction train of the defendant company. The scene of the accident will be more readily understood by the subjoined plat:

The first count in the petition charges: That on the twenty-third day of May, 1890, while plaintiff was in the act of crossing defendant's north side or switch track in the village of Clarksburg, Missouri, "at the regular passenger crossing," defendant's agents and servants carelessly and negligently ran its gravel or construction train over said crossing with the tender in front of the engine, which struck plaintiff and cut off his foot and otherwise injured him.

The second count charges that plaintiff attempted to cross defendant's railway "at the regular passenger crossing" on the north side of the depot in the village of Clarksburg; that before he made said attempt he looked up and down the railway and saw only the local freight going east; that after he reached the north track of said railway he remained there for said local freight to pull out; that during said interval of time the defendant's gravel and construction train carelessly and negligently ran over said passenger crossing and the public highway, fifty feet west of said passenger crossing, without ringing the bell or sounding the whistle, eighty rods distant from said crossing; that the engine was running with the tender in front, and ran against and over plaintiff, etc.

Answer, general denial and pleas of contributory negligence and reply thereto. The trial resulted in a verdict for plaintiff in the sum of $8,000.

On a line about due east and west, the defendant company's railroad runs through the little town of Clarksburg. Nearly midway between two of its streets which cross the railway tracks at right angles, the depot is situated. Seventy-five feet west of the point where the plaintiff was injured one of the streets thus crosses the railroad tracks, and the other about the same distance to the east. Parallel with the north line of the company's right of way is another street,

eighty feet wide which intersects the north and south-running streets before mentioned. On the north side of this eighty-foot street, and facing south upon the right of way aforesaid, stands a row of shops, stores and buildings. Crossing this eighty-foot street and nearly opposite the depot are stepping stones placed there it seems by the city authorities; but certainly not by the defendant company, as is admitted by plaintiff. There is a ditch along the north side of the north or "switch track," and over this ditch was a plank twelve or fourteen inches wide, which plank one witness testifies was put there by the railroad company to enable the people to go over to a platform before the depot was built; but there was no crossing there for vehicles. There was another way of reaching the depot, and that was by the street seventy-five feet west, but this was further than the usual way and not often traveled. The stones mentioned reached to the culvert thus formed by the plank crossing the ditch, and this pass-way had been used by people going to the trains some twenty-three years prior to the accident. From the plank thus laid across the ditch and over the railroad tracks to the depot platform, indeed all along the right of way there, gravel had been placed by the rail-road company to ballast its tracks.

The testimony shows that no signal was given by the train which did the injury; that it was an extra train; came from the east, was running at the rate of fifteen to eighteen miles an hour, and from the vicinity of the accident could readily have been seen, as it came in on the "switch track," something over six hundred yards away to the eastward. It is not disclosed by the evidence that there is any ordinance of the town requiring the giving of signals by passing trains or regulating their rate of speed. The evidence discloses that the plaintiff was thoroughly familiar with the locality of

the accident and all of the surroundings, owning as he did an interest in a carpenter shop on the north side of the eighty-foot street which parallels the defendant company's right of way and is in full view of it, and it being his wont to cross over to the depot frequently during the day in his business employment.

The place of the injury was at the point of intersection of the "regular passenger crossing," as it is termed, and the north edge of the "switch track." The plaintiff had started from the vicinity of his carpenter shop on the north side of the eighty-foot street and as he left the sidewalk he looked up and saw to the end of the "switch track" to the east (and the track was clear), then he wended his way across the stepping stones down to the culvert of plank across the ditch, but when he got there a long freight train came in from the west on the main track. This train being a long one stopped his further progress, and then almost immediately he was injured by a train coming in on the "switch track." When he reached that point he did not look up again at the "switch track" until he was struck by the tender of the train coming in from the east. This is quite apparent from the undisputed testimony in the case, as well as by his own distinct admissions as shown by his testimony on cross-examination and subsequent examinations. He said: "I could see the east end of the switch. The east end of the switch is, according to the best idea I have of it, about a quarter and a half a quarter east of where I was struck; it is over a quarter of a mile—I will say it is a quarter of a mile. When I first looked down the track east, I had just crossed the sidewalk, just as I started away from the buildings on the north side of the street; *it was then* that I looked towards the east to see if any train was coming from the east. *From that time until the train struck me I never looked any*

*more.* The buildings, I say, are eighty feet north of the railroad track. When I started from those buildings it was when I looked east to see whether a train was coming. When I got down to the railroad track and started upon the track, I was looking about the course I was going—about southwest.''

On his cross-examination he admitted that, if he had looked east, he could have seen the train coming which inflicted his injury, and that there was nothing to prevent him, had he looked, from getting out of the way of the train; but that he was observing the train over on the other track.

On his examination in chief, he had stated that when struck he was about ''a foot from the end of the ties on the outside of the north or 'switch track;' '' but on his cross-examination he said he stopped on that track and waited for the local freight on the main track to go east. Asked then if he really stood between the rails of the north track, he made this reply: *''I can't tell you; the first that I remember of was, the train under my feet was the first that attracted my attention,* whether I was between the rails or not; I was on the north track and was struck where I had stopped. I was watching another train that was passing on the other track. I knew before I crossed the ditch that I could not get to the depot before the local had passed it. *If I had moved out a little to the left, I could have been out of danger. If I had stopped six feet before I got to the track I would have been out of danger.''*

Other witnesses testified as follows: Stapleson who witnessed the accident from one of the stores on the north side of the eighty-foot street said: *''I cannot tell how close the engine was to the plaintiff when he stepped on the track; when I saw him, I saw it strike him.* * * * At the time he got on the track, he

could have seen the engine a quarter of a mile east if he had looked.''

Campbell said: ''I saw the accident. I was standing in my blacksmith shop door, right across the street from where it happened, a little to the west of it. I didn't see Maxey until the tender was just in the act of hitting him. Somebody hollered; I am certain somebody hollered that there was a man going to be killed, and I looked and the tender was just then striking him. * * * The person who hollered said, 'Somebody is going to get hurt.' I don't know who it was said it. I looked immediately towards the depot. I can't say whether Maxey was standing between the rails or not; all I know he was at the north track, he was right at the north rail, as near as I could tell. I hardly had time to look until I saw him fall.''

Sparks, who was nearer perhaps than any other witness, said: ''I saw the train that hurt this man. * * * I was on the back end of the local freight, on the rear platform of the caboose, talking with another young fellow. I noticed Maxey when he got within three or four feet of the track, just the last step he took; he didn't seem to be looking either way, seemed to be looking straight ahead of him; he did not look east that I saw. At the time I saw him three or four feet from the track, the tender was right at him, about ten or fifteen feet from him. I did not hear anybody holler at him.''

Smith said: ''I saw the construction train that struck Maxey. * * * I was within about one hundred feet of Maxey when he was struck. * * * I first saw the construction train when it was coming in on the east end of the switch something over a quarter of a mile from me. When I first noticed Maxey *he was right at the rail and the train was right on him, very close to him.*''

The defendant offered no testimony, but asked an instruction in the nature of a demurrer to the evidence, which being denied the cause went to the jury with the result above noted.

*H. S. Priest* and *W. S. Shirk,* for appellant.

(1) Plaintiff's own evidence conclusively shows that he was guilty of such gross contributory negligence as bars a recovery. The demurrer to his evidence prayed by defendant should therefore have been granted. *Dlauhi v. Railroad,* 105 Mo. 645; *Boyd v. Railroad,* 105 Mo. 371; *Butts v. Railroad,* 98 Mo. 372; *Yancey v. Railroad,* 93 Mo. 432; *Taylor v. Railroad,* 86 Mo. 457; *Powell v. Railroad,* 76 Mo. 80; *Turner v. Railroad,* 74 Mo. 602; *Henze v. Railroad,* 71 Mo. 636; *Zimmerman v. Railroad,* 71 Mo. 476. (2) Plaintiff's instruction given is grossly wrong in many particulars, only one or two of which it is necessary to notice. *First.* Plaintiff was not injured at a public crossing. There is no such allegation in the petition, and, if there was, the evidence conclusively shows that the so-called "passenger-crossing" was not a public crossing. *Gurley v. Railroad,* 104 Mo. 211, and authorities cited. *Second.* It has been repeatedly decided by this court that the statutory signals, sounding the whistle and ringing the bell, are only required to be given for the benefit of persons upon public crossings. *Bell v. Railroad,* 72 Mo. 50; *Stillson v. Railroad,* 67 Mo. 671; *Dahlstrom v. Railroad,* 96 Mo. 99; *Gurley v. Railroad,* 104 Mo. 211; *Railroad v. Spearen,* 47 Pa. St. 300; *Randall v. Railroad,* 109 U. S. 478; *Clark v. Railroad,* 11 Pac. Rep. 134; *Railroad v. Pierce,* 33 Kan. 61; *Cordell v. Railroad,* 64 N. Y. 535; Patterson's Railway Accident Law, sec. 160. *Third.* It violates every principle enunciated in the authorities cited in support of

point 2 of this brief, *supra.* (3) And it was error to refuse to give the *third, sixth* and *seventh* instructions prayed by defendant, leaving out of question the others asked. *Donahue v. Railroad,* 91 Mo. 357; *Damrill v. Railroad,* 27 Mo. App. 202. (4) Plaintiff is not entitled to recover under any view of his evidence. He has stated his whole case, and shows he has no cause of action. The judgment should therefore be reversed without remanding. *Carroll v. Railroad,* 17 S. W. Rep. 889.

*L. F. Wood* and *James E. Hazell* for respondent.

(1) The evidence conclusively shows that the respondent was not a trespasser, and instructions asked by the appellant, numbers 1, 2, 3 and 5, were properly refused by the court. Elliott on Roads & Streets, pp. 603, 604, note 1; *Gurley v. Railroad,* 104 Mo. 211. (2) The demurrer prayed by the defendant to the evidence was justly refused by the court. *Woods v. Ins. Co.,* 50 Mo. 112; *Thompson v. Railroad,* 51 Mo. 190; *Loyd v. Railroad,* 53 Mo. 509; *Petty v. Railroad* 88 Mo. 306; *Thorpe v. Railroad,* 89 Mo. 650; *Donahue v. Railroad,* 91 Mo. 357; *Reilly v. Railroad,* 94 Mo. 608; *Roddy v. Railroad,* 104 Mo. 249; *O'Connor v. Railroad,* 94 Mo. 196. (3) The respondent's right to assume that the managers of the appellant's trains (especially extra trains) would handle and manage them with care, is unquestioned, and that they would give timely warning of the approach of such trains, also that they would exercise that reasonable care toward the respondent that the law requires in such cases, and the sense of common justice among mankind appreciates and approves. *Kelly v. Railroad,* 95 Mo. 248; Shearman & Redfield on Negligence [3 Ed.] sec. 31; *O'Connor v. Railroad,* 94 Mo. 157; *Kennayde v. Railroad,* 45 Mo. 261; *Tabor v. Railroad,* 46 Mo. 356; *Johnson v.*

*Railroad*, 77 Mo. 546; *Petty v. Railroad*, 88 Mo. 318; *Donahue v. Railroad*, 91 Mo. 363; *Gurley v. Railroad*, 104 Mo. 228; *Frick v. Railroad*, 75 Mo. 608; *Harlan v. Railroad*, 65 Mo. 24. (4) It has been repeatedly held by the court of last resort in this state that the highest vigilance is required of persons managing trains within the limits of a town when approaching public crossings and other known places of danger, and that ordinary care is demanded between the streets in towns; that the rate of speed, although not limited by any law or ordinance within the town, is a question of fact which may be considered by the jury in connection with a failure to give warning of approach, to keep a vigilant lookout ahead of train, to keep the train under control, and such like attendant circumstances and surroundings, in determining the appellant's liability. *Maher v. Railroad*, 64 Mo. 276; *Hicks v. Railroad*, 64 Mo. 439; *Pryor v. Railroad*, 63 Mo. 217; *Frick v. Railroad*, 75 Mo. 610; *Taylor v. Railroad*, 83 Mo. 390; *Step v. Railroad*, 85 Mo. 234; *Harlan v. Railroad*, 65 Mo. 24. (5) The common-law count in the petition is sufficient to sustain the verdict in this case. *Frick v. Railroad*, 75 Mo. 599; *Miller v. Railroad*, Mo. App. 473.

SHERWOOD, P. J.—The refusal of this instruction presents the salient feature of this case, the facts of which, as already seen, stand out conspicuously on the record.

There can be no doubt that plaintiff was approaching the north of "switch track" without looking or listening, or giving any heed to his dangerous surroundings. This plainly appears from the testimony of Sparks, the only witness who distinctly saw the plaintiff *"just the last step he took,"* when only *"three or four feet from the track,"* and *"the tender right at him, about*

*ten or fifteen feet from him.*" This testimony of Sparks is not at variance with that of any other witness, nor even that of plaintiff himself. In fact it is confirmed to a certain extent by the testimony of plaintiff and other witnesses.

It is clear beyond question that plaintiff's injuries are due to his lack of obedience to the most ordinary teachings of prudence. When he arrived at the point of danger, he neither looked nor listened; but, absorbed apparently by his own meditations, he pursued his southwest course oblivious to danger and unconscious of peril. If the facts related do not constitute a clear case of contributory negligence, then it would be a vain and fruitless endeavor to search the books for one.

Counsel for defendant have instanced many cases from our own reports, where, in similar circumstances, a party plaintiff has been denied recovery, to-wit: *Boyd v. Railroad,* 105 Mo. 371; *Yancey v. Railroad,* 93 Mo. 433; *Taylor v. Railroad,* 86 Mo. 457; *Powell v. Railroad,* 76 Mo. 80; *Turner v. Railroad,* 74 Mo. 602; *Henze v. Railroad,* 71 Mo. 636; *Zimmerman v. Railroad,* 71 Mo. 476. See also *Railroad v. Houston,* 95 U. S. 697; *Austin v. Railroad,* 91 Ill. 35. But in none of them has there been exhibited on the part of a plaintiff a plainer case than the present one of negligence directly contributing its product of injury. To state such a case as this is to decide it; the facts speak for themselves and against any recovery by plaintiff.

II. Directly conducing to the result reached by the jury was the instruction given at the instance of the plaintiff, to the effect, that, if they found that plaintiff was attempting to cross defendant's track at a place where footmen were, and for a long time prior thereto had been accustomed to cross said track, and that *as the plaintiff stepped upon said track* he was struck by an engine which was being carelessly and negligently run

upon said track at a fast and unusual rate of speed, and without ringing the bell or sounding the whistle, they should find for the plaintiff.   This instruction is erroneous because it lays down the law as if the cross-ing in question had been a *public one*, when the law is that it is only where the crossing is *public* that any signals need be given, because it is diametrically opposed to the authorities already cited in the first paragraph of this opinion.   The judgement should be reversed, and, as it is apparent that plaintiff has no cause of action, the cause should not be remanded. All concur.