ORVILLE FOWLER ET AL., RESPONDENTS, V. MISSOURI-KANSAS-TEXAS RAILROAD CO., APPELLANT.—84 S. W. (2d) 194.

Kansas City Court of Appeals. June 3, 1935.

562

*Baker & Baker* and *Ira H. Lohman* for respondents.

*Harris, Price &Alexander* and *Irwin & Bushman* for appellant.

REYNOLDS, C.—Plaintiffs, husband and wife, seek to recover damages from the defendant, by way of loss of earnings, for the death of their minor son who was killed by an eastbound train of defendant at a crossing about one mile west of Wainwright, Callaway County, Missouri, on August 25, 1933.

The cause was instituted in the Circuit Court of Callaway County, Missouri, on October 27, 1933, by the filing of plaintiffs' petition therein.

The venue of the cause was, upon application of the defendant, changed to the Circuit Court of Cole County, where the cause was tried on May 25, 1934. The trial resulted in verdict and judgment for the plaintiffs in the sum of thirty-five hundred dollars, from which the defendant, after an unsuccessful motion for a new trial, prosecutes this appeal.

The first amended petition, on which the cause proceeded to trial, in all respects sufficiently sets out a cause of action by plaintiffs against defendant for the recovery of the damages sought by them thereunder. It alleges negligence as follows:

"First: That the crossing so maintained by the defendant company was at the time of said collision and had been for many years a highly dangerous crossing, all of which was well known to the defendant, its agents, servants and employees; that persons approaching said crossing from the north side could neither hear nor see trains approaching either from the east or west, and on account of the bluffs, trees, the contour and formation of the land, the number, size and height of the weeds, trees and brush on defendant's right of way defendant's trains could neither be seen nor heard.

Second: That defendant maintains and maintained a whistling post one-fourth mile west of the crossing aforesaid; that although defendant's agents, servants and employees in charge of said train knew of the existence of the dangerous crossing aforesaid, and knew that persons were likely at any time to pass defendant's tracks at said point, defendant, its agents, servants and employees failed and neglected to sound a whistle or ring a bell one-fourth mile west of said crossing as was its and their duty to do.

Third: That although defendant, its agents, servants and employees knew of the existence of said crossing and knew it was a dangerous crossing, yet defendant, its agents, servants and employees failed and neglected to blow a whistle or ring a bell a sufficient distance west of said crossing to notify and warn persons approaching said crossing that such train was about to pass.

Fourth: That although defendant, its agents, servants and employees saw and knew, or by the exercise of ordinary care and diligence could and should have seen and known that the plaintiff, Orville Fowler, Jr., when in a position of danger and unable to extricate themselves therefrom, it and they carelessly and negligently failed to stop said train when by the exercise of ordinary care and prudence, with the means and appliances at hand they could have stopped said train in time to have avoided said collision without injury to the train, its cargo or passengers.

Fifth: That when the plaintiff, Orville Fowler, was approaching the crossing aforesaid, driving the team hitched to the wagon aforesaid, and was within twenty-five feet of said crossing, he saw defendant's train approaching from the west and immediately undertook to and did bring his team to a stop before they passed upon defendant's track or came within the path of defendant's approaching train; that said team was a gentle team, used to and not afraid of passing trains; that after defendant, its agents, servants and employees in charge of said train saw, or, by the exercise of ordinary care, could and should have seen, the said plaintiff in this position and in close proximity to said track, and after and when said train was so close to said crossing the said plaintiff could not possibly pass over said tracks with safety, and after and when said train had reached a point approximately only one hundred feet from said crossing, the defendant, its agents, servants and employees in charge of said train carelessly and negligently caused to be issued from said engine a loud, screeching and screaming whistle thereby frightening said team and causing it to lunge upon defendant's tracks and to pull and place the team, wagon, contents and passengers in front of the said on-coming train.''

The amended petition, after charging the acts of negligence relied upon, concludes with the following paragraph:

''Plaintiffs state that as a direct and proximate result of said acts of negligence of the defendant, its agents, servants and employees and each of them, plaintiffs' said minor son was killed and they thereby became deprived of his services; that he was a boy of the age of six years, all to plaintiffs' damage in the sum of ten thousand dollars ($10,000), for which sum they pray judgment against the defendant, together with their costs in this behalf expended.''

The answer was a general denial coupled with allegations of contributory negligence as follows:

''1. That plaintiffs carelessly and negligently, as they did at said time and place, failed and neglected to stop said team of mules or divert the course thereof when they saw or by the exercise of ordinary care they could have seen defendant's said train approaching in time, by the exercise of ordinary care, to have stopped said team of mules or diverted the course thereof and thus and thereby

avoided and averted said collision, and the resulting injuries and damages, if any.

2. That plaintiffs carelessly and negligently, as they did at said time and place, failed and neglected to stop said team of mules or divert the course thereof when they heard or by the exercise of ordinary care they could have heard defendant's said train approaching, in time, by the exercise of ordinary care, to have stopped said team of mules or diverted the course thereof and thus and thereby have avoided and averted said collision and the resulting injuries and damages, if any.

3. That plaintiffs carelessly and negligently, as they did at said time and place, failed and neglected to remove their said infant son from said wagon and into a place of safety when they saw or by the exercise of ordinary care they could have seen defendant's train approaching in time to have removed their infant son from said wagon and into a place of safety and thus and thereby avoided and averted said collision and the resulting injuries and damages, if any.

4. That plaintiffs carelessly and negligently, as they did at said time and place, failed and neglected to remove their said infant son from said wagon and into a place of safety when they heard or by the exercise of ordinary care they could have heard defendant's train approaching in time to have removed their infant son from said wagon and into a place of safety and thus and thereby avoided and averted said collision and the resulting injuries and damages, if any.

5. That plaintiffs carelessly and negligently, as they did at said time and place, allowed and permitted their said infant son to ride in said wagon behind said team of mules when they knew or by the exercise of due care and caution they should have known that said wagon and team of mules was approaching or about to approach a place of danger.

6. That the plaintiffs, as they did at said time and place, carelessly and negligently attempted to drive said team of mules and wagon over defendant's railroad tracks at the crossing in question without stopping, looking and listening for the approach of trains on said tracks.

7. That the plaintiffs carelessly and negligently, as they did at said time and place, approached the said railroad crossing without stopping, and without looking and listening for the approach of trains on defendant's said railroad track, when by looking they could have seen and by listening they could have heard defendant's said train in time to have stopped said team of mules, diverted the course thereof and thus and thereby averted and avoided said collision."

The reply was a general denial.

There is evidence tending to show as follows: On the evening of . August 25, 1933, Orville Fowler, Jr., about the age of six years, was killed by defendant's engine and train of cars running into a wagon in which he was riding and the team by which it was drawn, at a crossing constructed and maintained over defendant's railroad tracks in Callaway County, at a point about one and one-half miles west of Wainwright, a station along the line of defendant's railroad. The plaintiffs herein were his father and mother. The wagon and team were, at the time he was killed, being driven by his father, the plaintiff Orville Fowler, who was also riding in the wagon. At the time in question, the plaintiffs, together with Orville Fowler, Jr., were living on the farm of one J. L. Adkinson, near the crossing mentioned. The farm adjoins, in part, the right of way of defendant's railroad track. Defendant's track ran through a part of the farm, dividing it north and south. Its track, at the point where the crossing was maintained, ran in an easterly and westerly direction. The plaintiffs lived on that part of the farm north of the track, the house in which they lived being located one hundred and fifty to two hundred feet north of defendant's right of way and about six hundred feet west of the crossing. The barn and barn lot used by the plaintiffs were on the same tract with the house but were located south of the house, the barn lot adjoining the right of way of defendant's railroad on the north thereof. On the south of the right of way of the defendant's railroad track and immediately south thereof, a county road ran parallel with the right of way, over which that part of the farm lying south of defendant's track was reached from that part on the north of the defendant's track. Immediately north of the right of way, on that part of the farm upon which plaintiffs lived, is a narrow strip of level land, then high bluffs back to the north extending also to the west. The defendant's track, approaching from the west, follows and curves around this high bluff slightly from a northwesterly direction to a point about one thousand to twelve hundred feet west of the crossing and then runs practically straight until some distance east of the crossing. There is a roadway leading from the barn lot gate on the north side of the right of way east to the crossing. It runs along the north side of and is parallel with defendant's right of way and seemingly encroaches upon it as it approaches the crossing. The crossing is over six hundred feet east of the barn lot gate. As it leaves the barn lot gate, the roadway is upon ground lower than the railroad track until it gets to within seventy-five to one hundred feet of the crossing when it is upon ground that is slightly higher than the railroad track. Shortly before the roadway reaches a point directly north of the crossing, it begins to make a turn to the south to pass directly over the crossing. From the point where it starts to make the turn south to the crossing, it is about forty-five feet to the center of the railroad

track. Immediately across from the gate of the barn lot two sycamore trees, or one which apparently branched into two, covered with drooping limbs and heavy foliage, stood, at the time in question, upon or along defendant's right of way. A number of other trees were found upon or along the side of defendant's right of way, east toward the crossing. There was evidence tending to show that the right of way from the barn lot to the crossing was covered with trees, shrubbery, brush, weeds, and vegetation of sufficient height and thickness totally to obscure the view of the track and the trains coming from the west thereon toward the crossing, of any one traveling over the roadway toward the crossing and looking back until a point was reached thereon about seventy-five to one hundred feet from where the road turns to pass south over the crossing, while, upon this portion of the road variously estimated from seventy-five to one hundred feet, a train approaching from the west could be seen after it came east of the sycamore trees at the barn. It appears from the testimony of the plaintiff Orville Fowler and others in the record that, after leaving the gate of the barn lot and starting east, one might not, by looking back west, at any time see any part of defendant's track west of the barn; that, when the higher road near the east end of the roadway is reached, for a distance of seventy-five feet over such roadway, one, by looking back west, had a view of defendant's track for a distance of about five telephone poles to the sycamore tree or trees standing upon or along the right of way near the barn lot gate; that any view of the track or of a train approaching thereon from the west by any one while upon this seventy-five feet of higher road was completely cut off by the sycamore trees and other trees and vegetation along the right of way near the barn. Plaintiffs had lived on this farm for twelve years. This roadway from the barn lot had been frequently used by plaintiff Orville Fowler, and he was entirely familiar with it and also with the crossing. It had likewise been used by a good many others having business with plaintiffs or visiting them on the farm. It appears to have been the way of ingress to the north part of the farm upon which plaintiffs lived from the public road upon the south and that part of the farm tended by him on the south and egress from the north part to the public road and that part of the farm lying on the south. The crossing in question had been there about twelve or fourteen years. The defendant maintained a station whistling post for Wainwright about one thousand feet west of the crossing and a little southwest of the house in which plaintiffs lived, at which point it ordinarily sounded a station whistle for Wainwright. On the evening in question plaintiff Orville Fowler together with the deceased minor son, Orville Fowler, Jr., drove from the barn lot gate along this roadway to cross defendant's railroad track on their way to a watermelon patch on that part of the farm south

of the track, being cultivated by the plaintiff Orville Fowler. There was evidence tending to show that the team of mules hitched to the wagon being driven by plaintiff Orville Fowler was about seven years old, was gentle, and was used to trains and the ordinary noises made by them. The plaintiff Orville Fowler was about six feet tall and stood in the wagon as he was driving toward the crossing, while Orville Fowler, Jr., was sitting in the rear of the wagon. It was testified by plaintiff Orville Fowler that the flies were bothering the mules as they left the barn lot; that they struck a trot as they came out of the gate and proceeded along the roadway toward the crossing with the flies still bothering them; and that he was trying to hold them back all of the way. He testified that, after he left the lot gate, he never looked back until just before he reached the high point on the east end of the road and that, just before he got to the high point, he looked back to ascertain whether or not a train was approaching and also listened to learn if he could hear one approaching from the west and neither saw nor heard one. He further testified that, as he passed over the high part of the road, he was looking and listening all the way from the barn. However, he appears to have testified upon cross-examination that, after reaching the high point on the roadway, he did not at any point thereon look back to see if a train was coming nor did he at any time stop his wagon to listen and that, as he started to make the turn from the roadway to the crossing, at which time the head of his team was about forty feet from the track, he saw the defendant's train approaching from the west as it came in view about five telephone poles west from the crossing. The evidence tends to show that prior to having reached such point it could not have been seen by one looking. There was evidence tending to show that the distance between telephone poles was about one hundred and thirty feet. The plaintiff further testified that when defendant's train came in view from the west, he immediately tried to bring his mules to a stop and succeeded in stopping them just as they were within about five feet of the defendant's track at the crossing; that, after he had stopped his team and had started backing them away from the track, the defendant's trainmen, when the train was within about one hundred and fifty feet of the crossing, gave a long, shrill whistle from its engine; that, upon the sounding of the whistle, the mules made a lunge and jumped across the track and the next thing he knew he was standing in the road, the train having struck the wagon and team, It was admitted that Orville Fowler, Jr., was in the wagon at the time and that he was killed by the impact of the collision. There was evidence upon the part of the trainmen tending to show that the whistle was sounded continuously from the station post to the crossing; that the usual station whistle is one long blast and two short ones; that, upon this occasion the engineer started to give the regular

whistle but sounded one blast only when, before it had died away, the fireman took it up and continued it all the way to the crossing. The fireman, who was upon the side of the engine next to the roadway upon which plaintiff Orville Fowler was driving, testified that he had full view of the plaintiff Orville Fowler as he was driving along the roadway toward the crossing after he reached the high point thereon at the east end thereof, for about one hundred feet, and that he caught up and continued the whistle to call such plaintiff's attention to the approaching train before he got upon the crossing. The plaintiff Orville Fowler, however, testified that there was no continuous sounding of the whistle but that only the one blast was given as the train came upon his wagon and team at the crossing. There was other testimony to the same effect. There was also evidence by defendant's operatives that a view of defendant's track and trains approaching from the west could have been had by anyone looking from any point upon the roadway from plaintiffs' barn to the crossing, notwithstanding the obstructions upon defendant's right of way. The train in question was in charge of H. E. Wolff, conductor. The train crew, other than H. E. Wolff, consisted of engineer M. W. Blume, fireman Alfred Bryan, head brakeman W. A. McMillan, and another brakeman, Mr. Bowman. The train consisted of one hundred and six cars, forty-six of which were empties and fifty of which were loaded, making an approximate load of 38,000 tons. It was made up at New Franklin, Missouri, at about 2:30 o'clock. There was evidence by the defendant's train operatives tending to show that, after having discovered the approach of plaintiff Orville Fowler to the crossing, defendant's train could not have been stopped to avoid the collision, with safety to others on the train. They alleged, however, the sounding of the whistle at least from the whistling post to the time that the train reached the crossing.

At the conclusion of plaintiffs' evidence and again at the close of the whole evidence, the defendant requested peremptory instructions in the nature of demurrers, which were by the court overruled.

The court, by instructions given at request of defendant, withdrew the first and fourth charges of negligence, set out in the petition, from the consideration of the jury, on the ground that neither was supported by any evidence in the record. The plaintiffs abandoned the second charge by their failure to ask an instruction submitting the same.

The cause was submitted to the jury on instructions upon the third and fifth grounds of negligence alleged in the petition.

## OPINION.

■ The defendant complains of the refusal of the trial court to give its requested instruction in the nature of a demurrer at the close of all the evidence. This complaint is based upon two con-

tentions, first, that the evidence shows that plaintiff Orville Fowler was guilty of contributory negligence as a matter of law; second, that the evidence fails to establish that defendant was guilty of any of the specific acts of negligence pleaded upon which the cause was submitted.

One of the charges of negligence on which the cause was submitted was based upon the common law negligence of defendant in failing to blow a whistle or ring a bell a sufficient distance west of the crossing to notify and warn persons approaching the crossing of the approach of its train. Another charge submitted was based upon the alleged negligence of defendant in giving a loud, screeching, and screaming whistle sufficient to scare plaintiffs' team after the team had been stopped by plaintiff Orville Fowler in a place of safety in close proximity to defendant's track where, in the exercise of ordinary care, it was or could have been seen by defendant's engineer driving the engine and at a time when defendant's engineer knew, or in the exercise of ordinary care should have known, that the giving of such whistle would scare the plaintiffs' team and cause it to lunge upon the track.

■ With respect to defendant's contention that the court erred in refusing its instruction in the nature of a demurrer for the first reason assigned and above noted, the plaintiffs' answer that the contributory negligence of plaintiff Orville Fowler, if shown by the evidence, cannot be imputed to his coplaintiff, his wife, and therefore may not be set up against him and her as a defense herein. Such would ordinarily seem to be the correct principle of law to be applied. [Herrel v. St. Louis San-Francisco R. R. Co. (Mo.), 23 S. W. (2d) 102.] However, it appears that such principle was not invoked by plaintiffs upon the trial below but, upon the other hand, the cause was tried and submitted by them upon the theory that the contributory negligence of plaintiff Orville Fowler, if any, was to be imputed to his coplaintiff and was sufficient in law to preclude recovery by either or both of them in this suit.

By Instruction 1 for plaintiffs, the jury was advised that, under certain facts, if founded by it from the evidence, a verdict was authorized for the plaintiffs, provided the jury should also find from the evidence that the plaintiff Orville Fowler and the deceased Orville Fowler, Jr., were each exercising ordinary care for his own and their safety; and by Instruction 2 for plaintiffs, the jury was advised that, under facts therein hypothesized, if found by the jury to be true under the evidence, a verdict was authorized for the plaintiffs, provided it also found that plaintiff Orville Fowler was in the exercise of ordinary care for the safety of his son Orville, Jr.

It is well settled law that parties upon appeal are held bound by the theory adopted by them in the trial court and that they are

not permitted to change such theory. [Carlton v. Stanek, 38 S. W. (2d) 505.]

The question then as to whether contributory negligence upon the part of plaintiff Orville Fowler is shown by the evidence must be determined from a consideration of the evidence itself.

In Kelsay v. Missouri Pacific Railway Company, 129 Mo. 362, l. c. 372, 30 S. W. 339, the court states the law as follows: "The duty of a traveler upon a highway, in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them is well settled law, not only in this court, but perhaps of all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing on it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obscured. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequence of his own neglect. [Hayden v. Railroad, 124 Mo. 566.]"

If the sight is obscured, then greater care should be given to sound. [Walker v. Wabash R. R. Co., 193 Mo. 453, 92 S. W. 83; Cole v. Railroad, 121 Mo. App. 605, 97 S. W. 555; Jackson v. Southwest Missouri Railroad Co., 171 Mo. App. 430, 156 S. W. 1005.]

A railroad is in itself and of itself a warning of danger; and anyone attempting to cross the same must use his senses—look and listen—to ascertain whether a train is approaching in dangerous proximity; and the failure to do so is negligence *per se*, contributing to any injury received. Such is elementary. [Jackson v. Southwest Missouri R. Co., supra.]

The rule thus announced seems to be predicated in each particular case upon the fact appearing that, upon looking, one can see or, upon listening, he can hear. Tested by such rule, it would not appear that, under the facts in the record in this case, it can be said that the plaintiff Orville Fowler was guilty of contributory negligence as a matter of law. The record discloses that, when he left the barn lot gate, he was at a distance of six hundred feet and over from the crossing; that, as he proceeded toward the crossing, for a distance approximating five hundred feet, if he had looked at the defendant's track in close proximity to the crossing, he would not have been able to see the track or a train thereon at such point if one had been thereon. It, therefore, was not necessary for him to look as he passed over that distance. He testified that he listened all the way from the barn down and failed to hear any noise suggesting the approach of a train, until he turned to go upon the crossing. He testified further that, upon reaching the higher ground from seventy-five to one

hundred feet west of the crossing, from which point a train might have been seen upon the defendant's track if one had been there, he looked but failed to see any train. He testified that he was looking all of the way as he passed over the seventy-five to one hundred feet of the higher part of the roadway on which he was traveling. True, upon cross-examination, he testified that he did not look as he passed over such part of the road but that he looked only when he came to that part; that he did not look afterwards, until he was making the turn on the road to go upon the crossing and was about forty-five feet therefrom, when he saw the train coming in view at the first point where it could have been seen, as it came east of the sycamore and other trees near the barn lot, which the evidence tends to show was something over six hundred feet west of the crossing. It appears that, as he passed over the higher part of the road at the east end, there was no train upon that part of the track which would have been within his view had he looked. It, therefore, appears that he was not in violation of the rule by failing to look, if he did so fail, for, by looking, he would not have seen any train at that time. He is only contributorily negligent under the rule when he fails to look in instances or under conditions when by looking he could see the train, if there, or by failing to listen when by listening he could hear the train, if there or approaching. As he was making the turn forty-five feet from the crossing, he did look; and, at the far end of the track within his view, over six hundred feet away, at the first point where it could have been seen by looking from any point along the roadway, he discovered its approach. He immediately undertook to stop his team and did so before it got upon the defendant's track. The evidence does not admit as a necessary conclusion therefrom that he was contributorily negligent. Whether he was contributorily negligent became a question for the jury under the evidence; and the court, in overruling the defendant's demurrer, did not, at least by reason of plaintiffs' alleged contributory negligence, commit any error.

■ Next, with respect to defendant's second contention that the court erred in refusing its demurrer for the reason that there is no sufficient evidence in the case that defendant was guilty of either of the specific acts of negligence charged upon which the cause was submitted. We are not of the opinion that the court did so err. It is contended by defendant that it was not guilty of negligence in approaching the crossing in question and failing to give a warning whistle or its usual station whistle at that point. It contends, first, that it did give such warning whistle and that such fact is shown by the evidence. However, there was evidence to the contrary which we are required to accept as true upon a consideration of this point.

It contends further that, even if it failed in giving a warning whistle or in sounding a bell, it was not guilty of negligence; that the crossing in question was not a public crossing, but was a mere private crossing; that, under such circumstances, it is not required by law to sound a whistle or ring a bell but is required only to give such warning at a public crossing. The law is to the effect, so far as statutory requirements are concerned, that it is not necessary to give such warning at a private crossing but that it is only necessary at public crossings. [Maxey v. Missouri Pacific Ry. Co., 113 Mo. 1, 20 S. W. 654; Cornett v. Chicago, Burlington & Quincy R. Co., 184 Mo. App. 463.] However, regardless of the fact, if it be a fact, that the warning as a statutory warning was not required by the statute to be given by defendant as it approached the crossing in question, it was still required, under the common law, to give warning in the performance of its duty to plaintiff Orville Fowler and others with him. The conditions surrounding this crossing were such that it was bound to know that they were unusual and that the roadway was thereby rendered more dangerous by reason of the approach thereto than if the surrounding conditions had not existed; and it was its duty to have taken ordinary precautions such as were commensurate with and required by the circumstances surrounding to protect persons approaching the crossing for the purpose of crossing thereon, that might not have been required under other conditions. [Peppers v. St. Louis-San Francisco R. Co., 316 Mo. 1104, 295 S. W. 757.] The statute requiring a signal only prescribes a minimum. The plaintiff Orville Fowler was not bound or required to depend solely on the statutory signal as such; and there is no fixed and determinate rule announced by the courts of this State by which it may be determined once and for all under just what circumstances a warning over and above the minimum statutory warning should be given. Each case rests upon its own facts. As said by the St. Louis Court of Appeals, in the case of Sisk v. Chicago, Burlington & Quincy Railroad Company, 67 S. W. (2d) 830, l. c. 837. ''No rule could be announced which would determine once and for all under what circumstances a warning over and above the minimum statutory warning should be given. Obviously each case must rest upon its own facts. Here the evidence did show many unusual circumstances and conditions which made the crossing more hazardous than the ordinary; and whether additional signals were required and whether the ringing of the bell alone would not have sufficed the requirements of due care were questions for the jury's consideration.''

It is true that what is said in the Sisk case was with reference to a public crossing. However, if a common law duty exists to look out for the safety of travelers approaching railroad crossings with the intention of crossing thereon where the circumstances are un-

usual, it is not clear why what was said in the Sisk case does not have application here, the same as in the case of a public crossing. [Salisbury v. Quincy, Ohio, K. C. R. Co. (Mo. App.), 268 S. W. 896.]

In Peppers v. St. Louis-San Francisco Railroad Company, supra, a whistling post was maintained by the defendant for a crossing which appears to have been a public crossing. In this case, the whistling station maintained at a point one thousand feet from the crossing in question was claimed by defendant to have been a station whistling post for the station of Wainwright. The defendant contends that, by reason thereof, it was under no legal obligation to sound a whistle for the crossing. However that may be, it appears that it had customarily given a whistle ·at this point at all times, whether as a mere station whistle or otherwise. Maintenance of the post by defendant, even if for the purpose of a station whistle, only casts upon defendant the duty of observing due care and caution and involved the obligation of whistling at such point. [Peppers v. St. Louis-San Francisco Railroad Company, supra.] Moreover, the crossing here was upon that part of the track between the post and the station of Wainwright. Its duty therefore, in the exercise of ordinary care and caution under the statute even, was to have sounded the whistle, giving warning of its approach toward the station. Had it given such warning of its approach, the plaintiff Orville Fowler probably would have had his attention called thereto and discovered its approach in time to have stopped his team before turning upon the crossing.

■ With respect to the charge of negligence submitted to the jury relating to the act of the operatives of defendant's train in blowing the whistle and frightening plaintiffs' team, it is contended by defendant that there is no evidence in the case showing or tending to show that the operatives of defendant's train saw or could have seen by the exercise of the proper degree of care that plaintiffs' team was frightened and no evidence upon which to base any finding that the operatives could have anticipated that, on sounding the whistle, plaintiffs' team of mules would have become frightened by it; that plaintiff Orville Fowler testified that he first heard the whistle just as he got his team stopped; and that the only conclusion to be drawn from his testimony is that his act in stopping the mules and the operatives' act in sounding the whistle were instantaneous. Defendant contends further that the same plaintiff testified that the whistle given by the operatives of the train was the usual station whistle and that, immediately after it was sounded, the team lunged upon the track; that the evidence disclosed that the plaintiff Orville Fowler was approaching the crossing and that the train was so close to such crossing at the time that such plaintiff could not cross the track with safety; that the team of mules was in motion up to the time it was within five feet of the track; that the plaintiff stated that,

just as he got his team stopped, he heard the whistle sounded and his mules thereupon became frightened; that the conclusion to be drawn from such evidence is that, before the mules came to a stop, the operative of the engine was in the act of preparing to blow the whistle and therefore could not be said, up to that time, to be negligent; that, under the circumstances thus disclosed, to find the defendant's operatives guilty of negligence would require that they must have grasped the situation instanteously and altered their course of conduct in the flash of a second. Defendant cites the opinion of this court in the case of Wheeler v. Wabash Railroad Co., 159 Mo. App. 579, 141 S. W. 472, in support of its contentions. However, it will be noted that such case was not a crossing case. What was said in such case was with reference to a traveler and a team upon a traveled public highway running parallel with the defendant's railroad track, at a distance of sixty feet therefrom, and not otherwise related to the defendant's track and railroad. The conditions involved and dealt with in that case, from which the defendant's duties therein arose and by which they were at least in part determined, are wholly unlike those involved herein.

■ The contention that there is no evidence showing or tending to show that the operatives of defendant's train saw or could have seen by the exercise of the proper degree of care that plaintiffs' team of mules was frightened and no evidence upon which to base any finding that the operatives sounding the whistle could have anticipated that plaintiffs' team of mules would become frightened by the sounding of the whistle may or may not be true. However, they were not necessarily required to know that the team was frightened. They could see that the team and wagon and its occupants were in close proximity to defendant's track upon which they were approaching at the time they sounded the whistle. Nor was it required that they should have anticipated that the exact and particular injury following from the sounding of the whistle would follow that did follow. Through the act of its train operator or operators in sounding the whistle, if such act was negligent, defendant became liable for anything after the completion of the injury following the sounding of the whistle, which appeared to be the natural and probable consequence thereof. [Kupferle Co. v. Terminal Ry. Co., 275 Mo. 451, l. c. 457, 205 S. W. 57; Dean v. Kansas City, St. L. & C. R. Co., 199 Mo. 386, l. c. 411, 97 S. W. 910; Zeis v. St. Louis Brewing Assn., 205 Mo. 638, l. c. 651, 104 S. W. 99; Brady v. Railroad, 206 Mo. 509, l. c. 537, 102 S. W. 978, 206 Mo. 509, 105 S. W. 1195; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766; Woodson v. Metropolitan St. Rys. Co., 224 Mo. l. c. 685, 707, 123 S. W. 820.] These cases announce the doctrine that, in cases where a party is charged with negligence in the commission of an act, he may be held liable for

anything which, after the injury is completed, appears to have been the natural and probable consequence of his act or omission.

■ The contention that the act of plaintiff Orville Fowler in stopping the mules and the sounding of defendant's whistle by the operatives of the train were instantaneous must be made to depend upon the facts as found by the jury. The evidence of plaintiff Orville Fowler did not necessarily admit of the conclusion that the sounding of the whistle was concurrent with the stopping of the mules. He testified as follows: "—just as I made the turn I saw the train coming in five telephone poles of me and I jerked on the lines to stop the team; I tried to swing them down the side of the track and I was on a four-foot fill and I couldn't do it and I tried to stop them and did stop them in five feet of the track and the engine was in two telephone poles of me at that time and when I got them stopped I thought I would back them and we would be all right and about that time he blew the whistle and the mules made a lunge —I got my mules to a stop. Up to that time I hadn't heard any whistle blown or bell rung. I was listening and looking. As soon as I got around the curve the train was coming from the west about five telephones poles away, about as far back as the sycamore tree. . . . When I got my team to a stop I started to try to back them. Up to that time there had not been any whistle blown or bell rung. I would judge that the engine was one hundred or one hundred fifty feet when the whistle was blown—a long screeching whistle. The team jumped right across the track." The evidence of the defendant's fireman was to the effect that he saw the plaintiff Orville Fowler as he was approaching the crossing and the turn thereto when he was first within about one hundred feet of the crossing, as he was passing east along the roadway from his barn. Under the circumstances, it could not be said, as a matter of law, that the act of the defendant's operatives in sounding the whistle at the time and under the conditions testified to by plaintiffs was not a negligent act by said operatives. Whether or not it was, under all of the circumstances of the case, was a question for the jury. They were required to exercise due care in the operation of the train for the safety of the plaintiffs or other persons approaching for the purpose of crossing its tracks over the crossing. Whether they did so, under all of the evidence in the case, was a question for the jury.

■ Neither is defendant's further contention that, under the evidence, before the mules came to a stop, the operative of the engine was in the act of preparing to sound the whistle and that therefore his act in sounding the whistle, if held to be negligent, would require that such operative must have grasped the situation and altered his course of conduct in the flash of a second, well made. The evidence does not necessarily require the conclusion that the operative of the engine was in the act of preparing to sound the whistle before the

mules came to a stop. We are required to accept as true the evidence of the plaintiffs in determining the demurrer thereto, regardless of the evidence of defendant in the record to the contrary. The plaintiff Orville Fowler testified that he had stopped his team and was in the act of backing it at the time that the whistle sounded. The operative therefore, at the time that the team stopped, if in the act of preparing to sound the whistle, was not in the performance of an act from which he could not have instantaneously desisted. Under the evidence, the whistle was sounded after a clear interval from the time the team was stopped. Whether, after the team had been stopped, it was necessary that the whistle be sounded or whether its sounding was an improper or a negligent act was, under all the circumstances, for the jury. In the testimony of defendant's fireman, it appears that he had full view of plaintiff Orville Fowler and knew that he was approaching the crossing when he was at a point one hundred feet from the crossing. Neither can it be said as a matter of law that, up to the time the team was stopped, the train operatives had not been otherwise negligent.

Taking plaintiffs' evidence as true, it does not appear that the sounding of the whistle by the defendant's operative was the mere statutory whistle, warning of the approach of defendant's train to the station of Wainwright. Under plaintiffs' evidence, it was only for the purpose of warning plaintiff Orville Fowler at the crossing. Defendant's operatives were not required, in the discharge of their duty toward the plaintiff Orville Fowler and others in the wagon, to do any act or give any warning which thereby would increase the hazard and danger of their situation. Such operatives were required to use ordinary care only for their safety. There was ample evidence in the record to justify the submission to the jury of defendant's negligence and that of its operatives in the sounding of the whistle at the time testified to by plaintiffs and under the conditions then existing.

█ Defendant contends further that error was committed by the trial court in admitting the evidence of the witness J. L. Adkinson with respect to conversations had with defendant's employees concerning the crossing in question and its condition and changes to be made therein and repairs to be made thereto. The evidence complained of is as follows:

"Q. (by MR. BAKER) Did you ever take up with the defendant the question of the condition of that crossing? A. Yes, sir.

"Q. Who did you take it up with?

"MR. HARRIS: We object to that; that is not proper.

"THE COURT: Objection overruled.

"MR. HARRIS: To which action and ruling of the court the defendant duly objects and excepts and continues to except.

"A. I first took it up with the section foreman. We had a section foreman that worked out of North Jefferson and I came down by there and took it up with them.

"MR. HARRIS: We object to that; the section foreman didn't have any authority to build crossings.

"THE COURT: The objection overruled.

"MR. HARRIS: To which action and ruling of the court the defendant duly objects and excepts and continues to except.

"Q. (by MR. BAKER) After talking to the section foreman did you go to see anyone else? A. Yes, sir.

"Q. Who was it? A. I went to see Mr. Hickey at Boonville.

"Q. Who was Mr. Hickey? A. Well, I was told he was superintendent of the railroad.

"Q. When was that? A. Two years ago or more.

"Q. Tell the jury what Mr. Hickey said—tell the jury what you said to Mr. Hickey about the crossing and what he said to you.

"MR. HARRIS: We object to that as immaterial.

"THE COURT: Objection overruled.

"MR. HARRIS: To which action and ruling of the court the defendant duly objects and excepts and continues to except.

"A. I explained it to Mr. Hickey and he did not seem to know much about it and he said we will walk over and talk to the engineer in the same room and he said that the crossing should be fixed and Mr. Hickey says, 'We will move the boards up there if you will do the work.'

"MR. HARRIS: We object and move to strike the answer as incompetent, irrelevant and immaterial.

"THE COURT: Objection overruled.

"MR. HARRIS: To which action and ruling of the court the defendant duly objects and excepts and continues to except."

The introduction of the evidence complained of is sought to be justified by the plaintiffs as being in support of the first charge of negligence in the petition, based upon the maintenance of the crossing in question as a dangerous crossing, wherein it was alleged that the defendant, its agents, servants, and employees had knowledge of its dangerous character and of the conditions surrounding it tending to make it so. Conceding the right of plaintiffs to show knowledge upon the part of defendant of such matters by competent evidence, it does not follow that the evidence in question offered was competent. The right to make proof of notice would not include at random proof of alleged statements by sundry employees to the effect that defendant ought to make certain repairs or changes or other matters of a collateral nature. [Stout v. Columbia, 118 Mo. App. 439, l. c. 444, 94 S. W. 307.] The most that plaintiffs were entitled to do was to show notice had or given. The evidence in this case relied upon for establishing such notice was notice given by the wit-

ness Adkinson, as owner of the farm, to a section foreman unnamed out of North Jefferson and to one Mr. Hickey in defendant's office at Boonville and to an unnamed engineer in such office. Just what jurisdiction or authority the section foreman had over the crossing in question and the conditions surrounding it is not made to appear. The evidence of the witness Adkinson discloses that he was a section foreman working out of North Jefferson where the witness went and took up the question of the condition of the crossing with him. Just what, if anything, the foreman had to do with the crossing in question is not made to appear so that there is nothing to show that notice to him was notice to the defendant with respect to any matter in connection with such crossing or the conditions surrounding it. Just what Mr. Hickey at Boonville had to do with the matter is likewise beclouded. The witness testified that he was told that Hickey was superintendent of the defendant railroad. There is no evidence to show by whom he was so told and no evidence to show that Hickey was, in fact, superintendent of the railroad or that the part of the track upon which the crossing in question was was under his jurisdiction as superintendent or otherwise or that he had anything to do with it whatever. Without some showing by plaintiffs that they had authority in their respective positions, as employees of defendant, over its railroad and the crossing in question and to speak for defendant concerning the same so that notice to them of the condition of the railroad track and the crossing would bind as notice to defendant, what may have been said to or by the section foreman or the engineer or Mr. Hickey was incompetent for any purpose. Prejudicial error was committed upon the trial by the admission of the evidence complained of.

It is true that the charge of negligence under which plaintiffs claim justification for the introduction of such evidence was, upon the submission of the case to the jury, abandoned by plaintiffs and withdrawn from the jury's consideration by the court for the reason that there was no evidence that defendant maintained a dangerous crossing in an instruction given to such effect at the request of the defendant. The evidence complained of, however, was not in terms withdrawn from the consideration of the jury in connection with other related charges upon which the cause was submitted. One of the charges submitted involved the dangerous character of the crossing and the knowledge of the defendant and the operatives of its train of surrounding conditions tending to make it dangerous. The jury was not directed by the court that such evidence was not for consideration in connection with such related charge, and it must necessarily be assumed that the jury considered it in connection therewith. The prejudicial character of the evidence and its erroneous submission were not therefore cured by the abandonment or the withdrawal of the charge of negligence above mentioned.

580

■ The defendant complains of instructions numbers 1, 2, and 4, given in behalf of the plaintiffs, and likewise of the refusal of Instruction O for defendant.

· It complains first that neither of such instructions 1 and 2 is warranted by the evidence. Following what has been said in the discussion of defendant's assignment of errors relating to the refusal of its demurrer, defendant's contentions noted with respect to such instructions must be denied, except in the particulars hereinafter noted with respect to instruction number 2 under paragraph 14.

■ It contends further that each of said instructions 1 and 2 contained unnecessary comments on the evidence; that each was argumentative; and that each assumed disputed facts to be true. There was evidence in the record supporting the facts hypothesized in each instruction. Each of said instructions left for the determination of the jury the question of the existence of the facts hypothesized therein and whether they were shown by the evidence to be true. The court merely advised the jury as to each instruction that, if the facts hypothesized therein were found by it to be true, then such facts authorized a verdict by it for plaintiffs. Neither of said instructions may be said to be argumentative, nor can it be said that the matters hypothesized therein were presented in argumentative form.

■ Instruction 1 did not assume that the operatives of defendant's train knew, or should have anticipated or known, that the sounding of the whistle would result in the injuries which it did, in scaring the plaintiffs' team and causing it to lunge upon the track; nor was it necessary to plaintiffs' cause that defendant or the operatives of its train should have known or anticipated that such very result would follow. Nor did the jury have the right to infer from anything said in such instruction that the court desired that it treat as a fact proven by the evidence that the sounding of the whistle frightened plaintiffs' team and caused it to lunge upon the track and that defendant's operators should have anticipated that such result would follow from such sound. Whether the sounding of the whistle frightened plaintiffs' team and caused it to lunge upon the track was a matter left to the jury to determine from the evidence. That defendant's operatives should have so known or anticipated that the sounding of the whistle would result in the exact injury that did follow therefrom was not necessary to plaintiffs' case.

■ The defendant complains that Instruction 2 assumes that the view of a person approaching defendant's crossing in question from the west was so obstructed by weeds, trees, and brush as to endanger the safety of persons so approaching said crossing. It cannot be said that such instruction presents any such assumption. It merely submits to the jury the question of fact as to whether the view of such persons so approaching the crossing from the west was so obstructed

by weed, trees, and brush as to endanger the safety of persons so approaching thereto. There is ample evidence in the record to justify such instruction; and the jury was merely advised that if, in connection with other facts hypothecated, it found such facts to be true, then a verdict for plaintiffs was authorized.

Neither is there merit in defendant's contention that such instruction permitted the jury to infer that, if the operators of defendant's train had sounded the whistle at some distance up the track, plaintiff Orville Fowler would have heard it and could and would have stopped his mules in time to avoid the collision. These were all matters of proper inference from facts shown in the record.

Defendant further complains of plaintiffs' instruction number 2 that it was erroneous in permitting a verdict for the plaintiffs for the mere failure of defendant and its operatives to sound the whistle in as much as, under the statute, if required to give a warning at the crossing in question, it not being within the limits of a city, such duty could be discharged by either sounding a whistle or ringing a bell.

The evidence is conflicting as to whether the whistle was sounded at the time and place it should have been; but there is no evidence one way or the other as to the ringing of the bell.

It is true that the statute, Section 4756, Revised Statutes 1929, if it has application to the crossing in question, does provide that, at public crossings not in the city, such duty may be discharged either by sounding a whistle or ringing a bell; and the petition in this case, in compliance with the requirements of the statute, does allege both the failure to sound the whistle and ring the bell. It is therefore not sufficient that the proofs show only the failure to sound the whistle; they are required also to show a failure to ring the bell. [Van Note v. Hannibal & St. Joseph R. Co., 70 Mo. 641; Terry v. St. Louis-San Francisco R. Co., 89 Mo. 586, 1 S. W. 746; Rollison v. Wabash R. Co., 252 Mo. 525, 1. c. 537, 160 S. W. 994.] Neither was it proper to instruct the jury that, upon the finding alone that the defendant failed to sound the whistle, a verdict would be thereby authorized for the plaintiffs. The instruction is erroneous in the respect thus complained of; and, upon a retrial, such error should be avoided. Defendant's complaints with respect to instructions 1 and 2 are otherwise overruled.

We do not consider defendant's complaint with reference to plaintiffs' instruction number 4 concerning the measure of damages therein set out as well taken. The cause does not appear to have been submitted upon two grounds of negligence, one under Section 3262 and the other under Section 3263, Revised Statutes 1929, one based upon a negligent act of the defendant's operatives of the locomotive in the operation thereof and the other upon the negligent act of defendant in maintaining a dangerous crossing, as suggested by

582

defendant. Each ground upon which the cause was submitted is based upon the negligent operation of defendant's locomotive by the operatives thereof, one in the negligent sounding of the whistle and the other in the negligent failure to give proper warning at a dangerous crossing.

■ It is true that, when two distinct grounds are submitted, one based upon the operation of the locomotive and the other upon the maintenance of a dangerous crossing or roadway, it is error to authorize by instruction the recovery of the full penalty as the measure of damage under Section 3262. [Culbertson v. Metropolitan Street Ry. Co., 140 Mo. 35, 36 S. W. 834; Crumpley v. Hannibal & St. Joseph R. Co., 98 Mo. 34, 11 S. W. 244.] However, we do not find such to be the case here.

■ Neither do we consider defendant's complaint with reference to the refusal of its Instruction O as well made under the record. It is not objectionable as being an improper statement of the law or otherwise, but the matters hypothesized therein are fully set out in numerous other instructions given at its request by the court. It is not necessary that the court indulge in continuous repetition.

We have thus disposed of all of the complaints advanced by defendant in its brief.

By reason of error noted with respect to the admission of the testimony relating to the conversation of the witness Adkinson with the alleged employees of the defendant company and with respect to the giving of plaintiffs' instruction number 2 in the particular noted, the judgment of the trial court is reversed; and the cause is remanded. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed, and the cause is remanded. All concur.