CHARLEY SALE and OCIE SALE, his wife, parents of GROVER FRANKLIN SALE, their deceased minor son, v. J. M. KURN and JOHN G. LONSDALE, Trustees in charge of and operating the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Railway Corporation, Appellants.—111 S. W. (2d) 98.

Division Two, December 17, 1937.

*J. W. Jamison* and *Ward & Reeves* for appellants.

*L. E. Tedrick* and *Phillips & Phillips* for respondent.

WESTHUES, C.—Respondents, plaintiffs below, filed this suit against appellants to recover $10,000 in damages for the death of their infant son.

Appellants are one J. M. Kurn and John G. Lonsdale, trustees in charge of, and operating the St. Louis-San Francisco Railway Company. A trial resulted in a verdict for appellants. A motion for new trial was sustained and defendants appealed. The reason set forth in the order granting a new trial was, that the trial court had erred in giving instructions requested by the defendants. The defendants, at the close of all the evidence, requested the trial court to give an instruction in the nature of a directed verdict. This was refused. Appellants contend that the evidence failed to establish a case for the jury, and therefore any errors in the instructions were

and are immaterial. Since we have concluded that this contention must be sustained we need not consider any other questions.

In this opinion Charley Sale will be referred to as the plaintiff. The railroad tracks of the St. Louis-San Francisco Railway Company and Highway No. 25, run parallel to each other north of McGuire in Dunklin County, Missouri, the highway being about fifty-seven feet east of the railroad. Plaintiff testified that on June 6, 1933, at about six P. M., he was driving south on this highway with a small load of hay drawn by a horse and mule team. Plaintiff's son, Grover Franklin Sale, five years of age, was with him. A gas electric train of the defendant, called the "Bull Moose," consisting of a motorcar, one baggage and mail car combined, and two coaches, was traveling north at a speed of about thirty miles per hour. Plaintiff further testified that when the train was about fifteen steps from him the whistle was sounded. The record reads as follows:

"As I approached the Bull Moose I could see the track over there; my view was not obstructed in any way to the train. I didn't see anybody or anything on the track. There was no public highway crossing as I went along there. When the train got in about 15 steps ahead of me it began to whistle. After it blew about the second or third whistle the team got frightened and ran straight across the highway across from the moose. On this second or third whistle when the team got frightened the Bull Moose was something like 10 steps of me, not quite even with me yet. The first indication I had that they were frightened was when they threw up their heads and looked at the Moose. Then they turned across the highway to run and ran across as fast as they could. After this second or third blast the Moose was still whistling. It was a little past me by the time I stopped noticing what the Moose was doing, for they were running across the highway down in this ditch and I quit noticing the Moose. I don't suppose it whistled over three times after the team showed it was frightened, and at that time it was a little past the wagon."

Charley Sale also testified that both he and his son were thrown from the load of hay and his son sustained fatal injuries from which he died the next day. The whistle referred to was not a steam whistle but an air horn. Respondents introduced other evidence that the horn of the Moose was sounded a number of times near the place where the team became frightened. Plaintiff testified that there was no public crossing north within such distance as to require the train crew to give statutory crossing signals. The evidence introduced by the defendants did not aid plaintiff's case. The engineer, brakeman, and conductor testified that the horn of the Moose was not sounded. The conductor and the brakeman testified that they saw the team running when the train was even with it. Plaintiff testified that the first blast of the horn was sounded when the train was about fifteen

steps from him. If that be true, and we must assume that it is, the train, running at a speed of from twenty-five to thirty miles per hour, would have passed the team and wagon within a second or two after the first blast. This is substantiated by plaintiff's testimony:

"I don't suppose it whistled over three times after the team showed it was frightened, and at that time it was a little past the wagon."

It will be noted that plaintiff testified that the team did not become frightened until the second or third blast.

■ The engineer was the only person in charge of the motorcar. Such a car has no fireman, and the engineer is the only person whose duty it is to keep a lookout. He owed a duty to his passengers to keep a lookout ahead for obstructions on the tracks. Under our humanitarian doctrine the railroad would be liable if the engineer failed to exercise ordinary care to discover persons upon the track in danger of being injured. [Thompson v. Quincy, O. & K. C. Railroad Co., 18 S. W. (2d) 401; 52 C. J. 588, sec. 2150.] ■ Negligence on part of the engineer cannot be reasonably inferred from the evidence. Plaintiff testified that he saw the train for some distance, that the ground was level and there was nothing to obstruct his view of the train, or the engineer's view of the highway. Respondents argue that it was the duty of the engineer not only to keep a lookout straight ahead of the Moose but also to look laterally ahead of his train. Had the engineer looked laterally ahead he would not have noticed anything wrong until about the time he was even with plaintiff's team and wagon. The facts in the cases cited by respondents in support of their contention, that it was the duty of the engineer to keep a lookout laterally ahead, are not similar to the facts in this case. To illustrate, note the case of Womack v. Mo. Pac. Railroad Co., 337 Mo. 1160, 88 S. W. (2d) 368, by Division One of this court. The plaintiff in that case was injured by a train at a public crossing, and the court held that ordinary care required the engineer to look for cars approaching the crossing and to give timely warning of the train's approach. It is evident that such cases are not in point. In the case of Fowler v. Missouri-K.-T. Railroad Co., 229 Mo. App. 561, 84 S. W. (2d) 194 (Kansas City Court of Appeals), the plaintiff was approaching a crossing, and when within a few feet of the tracks the whistling of an oncoming train frightened his team. There the charge of negligence was the failure of the train crew to give timely warning of the train's approach so that plaintiff could have stopped his team at a safe distance from the tracks. This of course was also a crossing case and not in point. We may observe, however, that the court held it to have been the duty of the operators of the train to sound a warning for the private crossing involved in that case. In the case of Wheeler v. Wabash Railroad Co., 159 Mo. App. 579, 141 S. W. 472, the trial court directed a

verdict for the defendant. The appellate court affirmed that ruling. The facts in that case were more favorable to the plaintiff there than the facts in the present case are to the plaintiff. Note the comment of the court:

"But the difficulty of plaintiff's position is that her evidence will not support a reasonable inference that the engineer was guilty of such breach of duty. In the first place, her own testimony that the engine was only 150 feet away when the team first exhibited fright discloses that the engineer had less than three seconds in which to discover her plight, and to refrain from sounding the whistle—an act he then must have been preparing to perform. If this were a case where the engineer was duty bound to be on the lookout for plaintiff, we would say that an inference requiring him to grasp the situation and alter his course of conduct in so short a time, to say the least, would be of very doubtful tenability. But, in the absence of any duty to be on the lookout, plaintiff, to maintain her cause, must show that the engineer had discovered her peril in time to save her by acts not inconsistent with his obligation to operate his train in a lawful and proper manner."

That ruling is applicable to the present case and we are of the opinion that the trial court should have sustained the defendants' requested demurrer at the close of all the evidence.

It follows that the case must be remanded to the trial court with directions to set aside its order granting plaintiff a new trial and to reinstate the verdict for the defendants and enter judgment thereon. It is so ordered. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.